UNITED STATES of America,
Plaintiff–Appellee,

v.

Chance REARDEN, Defendant–
Appellant.

No. 02–50311.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 9, 2003.

Filed Nov. 6, 2003.

Jonathan D. Libby, Deputy Federal Public Defender, Los Angeles, CA, for the defendant-appellant.

Ronald L. Cheng and John B. Owens, Assistant United States Attorneys, Los Angeles, CA, for the plaintiff-appellee.

Before WALLACE, RYMER, and TALLMAN, Circuit Judges.

RYMER, Circuit Judge:

Chance Rearden appeals from his conviction and sentence following a bench trial for shipping child pornography (over the Internet) in violation of 18 U.S.C. § 2252A(a)(1). He contends that in light of *Ashcroft v. Free Speech Coalition,* 535 U.S. 234, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002), there was insufficient evidence that an image of an actual child was involved in his offense. We disagree, as the government presented adequate evidence through an expert to satisfy its burden of proof. Rearden also challenges the district court's ruling on various aspects of his sentence, including a special condition that he refrain from using the Internet without permission of the Probation Office. We conclude that this condition, and the others, were reasonably related to legitimate sentencing considerations in Rearden's case. As the remaining issues do not require reversal, we affirm.

I

On July 26, 2000, David Settlemyer, who had just been released from prison for attempted second-degree kidnaping, posted a message in a chat room expressing interest in buying "snuff films of little children" and inquiring whether anyone was interested in "raping and ravaging" his three nieces, ages sixteen, fourteen, and eight. Rearden, who lived in Los Angeles, responded, and the two began corresponding via e-mail. Between July 26 and August 10, 2000, Settlemyer, who lived in Louisiana, communicated frequent-

ly with Rearden about coming to Louisiana so the two could kidnap and rape Settlemyer's nieces and kill their mother, who was Settlemyer's sister.

On August 10, 2000, Settlemyer was arrested by state authorities for solicitation of murder, and thereafter was charged by federal authorities with receiving child pornography and enticing an individual to travel in interstate commerce to commit criminal sexual activity. Unaware of these events, Rearden continued to e-mail Settlemyer expressing concern over the lack of communication between them.

In November 2000, Settlemyer began cooperating with federal authorities. He provided agents access to his e-mail account and assisted them in composing a series of messages to Rearden. Rearden indicated in his e-mails that Settlemyer should forget about his nieces and instead come to California, where he and Rearden could "hunt" children together. In an e-mail sent to Rearden on December 18, 2000, Settlemyer told Rearden he had been "booted out of all the clubs" and asked for some "invites" or website addresses to keep him "tided over" until they could get together. On December 21, 2000, Rearden e-mailed Settlemyer three website addresses and attached fifteen "jpeg" images containing graphic child pornography. These images include scenes of oral and anal intercourse between adult men and infant, prepubescent, and pubescent boys, as well as the display of the genitalia of boys.

At some point it was agreed that Settlemyer would come to California. Rearden was arrested February 23, 2001, at a Greyhound station in Palm Springs when he arrived to pick up Settlemyer. After being advised of his *Miranda* rights, Rearden admitted he had sent the images containing child pornography to Settlemyer and that these images could be found on the hard drive of his computer. A subsequent search of Rearden's home confirmed his confession. Rearden also said that he had discussed raping and murdering children with Settlemyer, but that these were fantasies that he did not intend to act upon.

An indictment was returned charging Reardon with conspiring to travel in interstate commerce to engage in a sexual act with a juvenile in violation of 18 U.S.C. § 2423(b), enticing a person to travel in interstate commerce in order to commit aggravated sexual abuse upon minors in violation of 18 U.S.C. § 2422(a), shipping child pornography in interstate commerce in violation of 18 U.S.C. § 2252A(a)(1), and criminal forfeiture, 18 U.S.C. § 2253(a)(3). The parties waived a jury trial, and the district court found Rearden guilty of shipping child pornography and not guilty of the remaining charges. Rearden was sentenced to fifty-one months imprisonment, to be followed by a term of supervised release with various standard and special conditions. The court applied a four-level enhancement under U.S.S.G. § 2G2.2(b)(3) for an offense involving material that portrays sadistic or violent conduct, and refused to depart for aberrant behavior. The court also imposed a $10,000 fine.

Rearden timely appealed.

## II

■ Relying upon *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002) (*Free Speech II*), Rearden argues that his conviction must be reversed because the government produced insufficient evidence to prove beyond a reasonable doubt that the pornographic images transmitted to Settlemyer were of actual children. We review de novo claims of insufficient evidence. *United States v. Odom*, 329 F.3d 1032, 1034

(9th Cir.2003). In *Free Speech II*, the Court affirmed our holding in *Free Speech Coalition v. Reno*, 198 F.3d 1083 (9th Cir. 1999) (*Free Speech I*), that the definition of "child pornography" in 18 U.S.C. § 2256(8)(B) was unconstitutional to the extent that it proscribed possession of an image that "appears to be of a minor engaging in sexually explicit conduct." This came about because, prior to 1996, child pornography was defined as "images made using actual minors" but the Child Pornography Prevention Act, 18 U.S.C. § 2251 *et seq.*, "extend[ed] the federal prohibition against child pornography to[include] sexually explicit images that appear to depict minors but were produced without using any real children." *Free Speech II*, 122 S.Ct. at 1396.

Rearden was charged with violating 18 U.S.C. § 2252A(a)(1), which punishes any person who "knowingly mails, or transports or ships in interstate or foreign commerce by any means, including by computer, any child pornography." At the time, the term "child pornography" included (1) any visual depiction including a photograph—or computer-generated image of sexually explicit conduct where "the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct," 18 U.S.C. § 2256(8)(A), and (2) a visual depiction that "is, or appears to be, of a minor engaged in sexually explicit conduct," 18 U.S.C. § 2256(8)(B). However, when Rearden went to trial, *Free Speech I* was the law of the circuit. For this reason, even though the Supreme Court had not yet rendered its decision in

*Free Speech II*, the government recognized its obligation to prove that the children depicted in the images transmitted by Rearden were of actual children.

The government offered the testimony of David Mark Verrier Jones, an employee of a visual effects studio, whom the court accepted as an expert in the creation of visual effects based on his training and experience in the film industry. Jones testified that in his opinion, the images transmitted by Rearden had not been manipulated in any manner. He indicated that they had not been composited (which involves the altering of images by, for example, transferring the head of one person to the body of another) or morphed (which in Jones's view involves the creation of an intermediate image from two other images). Jones stated that it was beyond the limits of modern computer graphics to create a completely artificial picture of a believable photo-realistic human being (except, perhaps, of people who are very small in the background). Rearden put on no evidence to the contrary.

Rearden contends that Jones's testimony was not helpful in proving that the images were of real children, and went no further than to show that the pictures were not "morphed," which, he contends, is irrelevant under *Free Speech II* because "morphing" (or altering) pictures of real children so that they appear to be engaged in sexual activity was not found unconstitutional. We disagree. Jones's testimony went well beyond his own, or the Supreme Court's discussion of morphed images.[1] He examined the images and opined that

---

1. The Court stated in *Free Speech II* that "[s]ection 2256(8)(C) prohibits a more common and lower tech means of creating virtual images, known as computer morphing. Rather than creating original images, pornographers can alter innocent pictures of real children so that the children appear to be engaged in sexual activity. Although morphed images may fall within the definition of virtual child pornography, they implicate the interests of real children and are in that sense closer to the images in *Ferber*." 122 S.Ct. at 1397 (referring to *New York v. Ferber*, 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982)). That provision was not at issue in *Free Speech II*.

they were not manipulated, that any attempted creation of a digital photo realistic human being would be readily apparent, and that these images were entirely consistent as photographs. Based on this testimony the trier of fact could reasonably conclude that the government had carried its burden of proving that the images depicted actual children.

Rearden also faults Jones's testimony for being at odds with Congressional findings, noted by the Court in *Free Speech II*, to the effect that "[a]s imaging technology improves ... it becomes more difficult to prove that a particular picture was produced using actual children." 122 S.Ct. at 1397. However, we see no conflict; that the technology to create images of photorealistic human beings may develop in the future does not make Jones's testimony based on his contemporary experience inapposite. Nor does the possibility that it will be tougher for the government to carry its burden of proof mean that it failed to do so in this case.

■ Finally, Rearden submits that the evidence was also insufficient because the government failed to prove the ages of the individuals depicted by adducing testimony from a medical expert. However, Rearden admitted on the stand that he knew at least one of the images he sent was of "somebody under 18," and it is obvious from the pictures themselves that they are of children. Expert testimony was not, therefore, necessary in this case to assist the court. Fed.R.Evid. 702; *see, e.g., United States v. Katz,* 178 F.3d 368, 373 (5th Cir.1999); *United States v. O'Malley,* 854 F.2d 1085, 1088 n. 3 (8th Cir.1988).[2]

### III

Rearden's sentence was enhanced by four levels under U.S.S.G. § 2G2.2(b)(3)

for transmitting "material that portrays sadistic or masochistic conduct or other depictions of violence." In this he claims the court erred for two reasons: first, because failure to define "sadistic" makes § 2G2.2(b)(3) unconstitutionally vague; and second, because the district court mistakenly concluded that any conduct involving anal penetration of a child is per se sadistic.

■ We allow challenges to the sentencing guidelines on vagueness grounds, *United States v. Johnson,* 130 F.3d 1352, 1354 (9th Cir.1997), but Rearden failed to raise this issue before the district court. Accordingly, our review is for plain error. *United States v. Buckland,* 289 F.3d 558, 563 (9th Cir.2002) (en banc). Thus, there must be (1) error, (2) that is plain, and (3) that affects substantial rights. *United States v. Jordan,* 256 F.3d 922, 926 (9th Cir.2001). If all three conditions are met, we may then exercise discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.*

■ There is no plain error here, because § 2G2.2(b)(3) does not fail to give a person of ordinary intelligence fair notice that it would apply to the conduct contemplated. This is the test that we apply when First Amendment protections are not implicated, as is true of child pornography. *Johnson,* 130 F.3d at 1354 (articulating "as applied" test); *see also Ferber,* 458 U.S. at 763, 102 S.Ct. 3348 (recognizing child pornography as a category of material outside the First Amendment). At least two of the images that Rearden transmit-

---

**2.** We decline to consider Rearden's argument that the court may have relied on the photographs themselves to determine whether they

depicted actual children, rather than to determine the age of the individuals depicted, because it is raised for the first time in reply.

ted depict the anal penetration of young prepubescent children by adult males. A person of reasonable intelligence would figure that a picture of such conduct portrays an adult male's pleasure at the expense of the child's pain. This meets the ordinary meaning of "sadistic"—"the infliction of pain upon a love object as a means of obtaining sexual release," "delight in physical or mental cruelty," and the use of "excessive cruelty." *Webster's Third New International Dictionary* 2254 (1986) (defining "sadism"); *see also Black's Law Dictionary* 1198 (1979) (defining sadism as "[a] form of satisfaction, commonly sexual, derived from inflicting harm on another"); *United States v. Delmarle,* 99 F.3d 80, 83 (2d Cir.1996) (noting these dictionary definitions); *United States v. Parker,* 267 F.3d 839, 847 (8th Cir.2001) (same).

Rearden argues that the vagueness of the term "sadistic" is further manifest by the fact that different courts have applied the enhancement in different ways. For example, he points out that some courts require that some pain be shown by the victim, *see United States v. Turchen,* 187 F.3d 735, 738–40 (7th Cir.1999), while others, such as the district court in this case, do not. *See Delmarle,* 99 F.3d at 83 (upholding enhancement as the sexual act depicted would have to be painful); *Parker,* 267 F.3d at 847 (upholding enhancement as the sexual conduct depicted is sufficiently painful to qualify as sadistic). Whether uniformity is completely lacking, however, is immaterial for, as we have previously held, "[j]ust because other courts of appeals differ in their definitions of a terms [sic] does not mean that the term is void for vagueness." *United States v. Davis,* 36 F.3d 1424, 1434 (9th Cir.1994) (internal quotation marks omitted).

We conclude that § 2G2.2(b)(3) is not vague as applied to Rearden's conduct in transmitting the images that he sent to Settlemyer. Therefore, there can be no plain error.

▇▇▇ **[6]** Nor are we persuaded that the district court erred by improperly applying the enhancement. The interpretation of the Sentencing Guidelines is reviewed de novo, *United States v. Garcia,* 323 F.3d 1161, 1164 (9th Cir.2003); application of the Guidelines to the facts of a particular case is reviewed for an abuse of discretion, *United States v. Technic Servs., Inc.,* 314 F.3d 1031, 1038 (9th Cir.2002). The district court found from examining the pictures "that they show sadistic acts, both because the act itself must necessarily be a painful one, and physical and, also, because it's a painful psychological and emotional experience." Rearden argues that the image of a young child being penetrated does not per se depict a sadistic act as there is no indication that the child experienced pain or that the perpetrator intended to derive sexual pleasure from the child's suffering. However, the court viewed the pictures (as have we), and was well within its discretion to conclude that what was shown is necessarily painful and thus sadistic. Common sense dictates that in order to engage in the acts depicted the adult males in the photographs must have experienced some sexual excitement. More importantly, what they are shown doing necessarily hurt the child. Many courts have upheld application of the enhancement in these circumstances. *See, e.g., United States v. Lyckman,* 235 F.3d 234, 239 n. 22 (5th Cir.2000) ("One hardly requires a medical degree to ascertain that vaginal intercourse with an adult male would involve pain, both physical and emotional, for a young girl."); *see also United States v. Caro,* 309 F.3d 1348, 1352 n. 1 (11th Cir.2002) (surveying legal landscape and concluding that "no circuit requires expert medical testimony in determining whether child pornography, which a defen-

dant possessed, was sadistic"); *United States v. Hall*, 312 F.3d 1250, 1263 (11th Cir.2002) (holding that a sentencing court need not determine, in applying § 2G2.2(b)(3), whether the minor's expression sufficiently reveals pain if the image portrays vaginal or anal penetration of a young child by an adult male, as such penetration necessarily would be painful); *United States v. Bender*, 290 F.3d 1279, 1285–86 (11th Cir.2002) (holding that photographs of adult males vaginally and anally penetrating young children depicted "the subjection of a young child to a sexual act that would have to be painful," and thus were sadistic images warranting a § 2G2.2(b)(3) enhancement) (internal quotation marks omitted); *United States v. Garrett*, 190 F.3d 1220, 1223–24 (11th Cir. 1999) (photographs involving children being penetrated vaginally and anally by adult males portrayed acts necessarily painful to young children for purposes of § 2G2.2(b)(3)); *Delmarle*, 99 F.3d at 83 (anal penetration of eight- or nine-year old boy was likely to cause pain and be sadistic within the meaning of § 2G2.2(b)(3)). We join these circuits, and hold that the district court did not improperly apply § 2G2.2(b)(3) after finding that the images depicted subjection of a child to a sexual act that would have to be painful, and thus sadistic.

Alternatively, Rearden contends that the visual depiction of a child being sexually molested is already covered by the base offense level for shipping material involving the sexual exploitation of a minor, so that more than penetration must be shown for the "sadistic" enhancement to apply. This is not correct, because § 2G2.2(b)(3) is narrower than the base offense level which could, for example, involve pictures of a naked child without physical sexual contact, as the Fifth Circuit observed in *Lyckman*. 235 F.3d at 240.

He also maintains that § 2G2.2(b)(3) does not apply for the additional reason that the government failed to prove Rearden *knew* the images he sent portrayed sadistic conduct. *Compare United States v. Kimbrough*, 69 F.3d 723, 734 (5th Cir.1995)(finding sufficient evidence to conclude that the defendant intentionally ordered and possessed pornography depicting sadistic conduct and affirming enhancement), *and United States v. Tucker*, 136 F.3d 763, 764 (11th Cir.1998) (per curiam) (adopting reasoning of the Fifth Circuit and holding that intent is a necessary requirement of a § 2G2.2(b)(3) enhancement), *with United States v. Richardson*, 238 F.3d 837, 840–41 (7th Cir.2001) (observing that sentencing enhancements are generally imposed on the basis of strict liability rather than a defendant's intentions). Rearden testified that he did not look at all of the pictures before he sent them to Settlemyer and did not remember seeing any penetration. However, Rearden also testified that he interpreted Settlemyer's e-mail as a request for pictures of raping or killing children, and that from the images he did look at he "saw they were the type of things he was asking for." Rearden admitted that he found the images on a website that catered to those involved in homosexual sadistic and masochistic activities. Therefore, we do not need to decide whether the government must prove that a defendant intended to send images that depicted sadistic conduct for § 2G2.2(b)(3) to apply because, even if it must, the evidence supports the enhancement in Rearden's case.

## IV

Rearden next argues that he is entitled to resentencing because it is unclear on what basis the district court refused his request for an aberrant behavior downward departure and because the

court relied on clearly erroneous factual findings in denying the departure.

 We have jurisdiction to review a district court's determination regarding its *authority* to depart downward under the Guidelines, but we lack jurisdiction to review a *discretionary* denial of a downward departure. *See United States v. Davis*, 264 F.3d 813, 815 (9th Cir.2001). Rearden believes it was the former, based on the government's argument at sentencing that his conduct was not aberrant because he had been able to locate the hard-core child pornography pictures quickly, even though such pictures are typically difficult to find due to their illegality, and because he had saved the pictures on his computer. Rearden interprets these remarks as representing that the court lacked authority to depart on the basis of aberrant behavior, but we disagree: they simply made the case for why the departure was unwarranted. In any event, the court's stated ground for refusing departure was that it could not conclude that Rearden was unfamiliar with this kind of depiction given his writings. This indicates a decision founded in discretion, not lack of authority. *See United States v. Pinto*, 48 F.3d 384, 389 (9th Cir. 1995) (holding that decisions to deny downward departure will be considered discretionary unless the court indicates that it could not do so as a matter of law); *Davis*, 264 F.3d at 817 (holding that the court's silence regarding authority to depart is not sufficient to indicate belief that it lacked power to depart). Accordingly, we lack jurisdiction to review Rearden's challenge.

## V

The district court imposed a fine of $10,000, payable in installments of $300 per month as directed by the Probation Office. Rearden maintains that it should not have done this because he established an inability to pay and the court failed explicitly to resolve the question of his future ability to pay as required by Fed. R.Crim.P. 32.

 U.S.S.G. § 5E1.2(a) provides that courts "shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine." A district court's determination that a defendant has the ability to pay a fine is a finding of fact reviewed for clear error. *See United States v. Brickey*, 289 F.3d 1144, 1152 (9th Cir.2002). The burden is on the defendant to show inability to pay. *United States v. Haggard*, 41 F.3d 1320, 1329 (9th Cir. 1994).

 It is undisputed that Rearden lacked the ability to pay a fine based on his present financial status at the time of sentencing. Nevertheless, the presentence report (PSR) recommended a $10,000 fine as "Rearden should be able to continue his employment as a set decorator and art director and make monthly payments of $300" toward the fine. Rearden contends that there was insufficient evidence of his future ability to pay, but he made no showing that he would be *un* able to resume his career or to pay anything toward a fine when released. He simply argued that his prospects were uncertain, which is too conjectural to create a conflict with evidence that he had maintained steady employment as an art director and set decorator, earning $60,000 to $80,000 annually, and enjoyed a reputation in the industry for having considerable skill. In these circumstances the court could impose a fine within the guideline range. *United States v. Ladum*, 141 F.3d 1328, 1344 (9th Cir.1998).

Rearden submits that the court also erred by failing to consider how the stigma associated with his conviction would adversely affect his future ability to retain

work. This is a point that he did not make to the sentencing judge, but it goes no place in any event because by this logic, any person convicted of trafficking in child pornography would be exempt from paying a fine as it could always be argued that such a conviction may impair prospects for employment in the future.

Rearden argues in the alternative that he is entitled to resentencing because the district court did not explicitly resolve the question of his future ability to pay. At the time of his sentencing, Rule 32(c)(1) provided that "[a]t the sentencing hearing ... [f]or each matter controverted, the court must make either a finding on the allegation or a determination that no finding is necessary because the controverted matter will not be taken into account in, or will not affect, sentencing." Fed. R.Crim.P. 32(c)(1).[3] The government counters that this rule has been interpreted as applying to factual challenges only, rather than to a probation officer's legal opinions or conclusions. *See, e.g., United States v. Lindholm,* 24 F.3d 1078, 1085 n. 7 (9th Cir.1994) (holding that Rule 32 "only applies to factual inaccuracies, not to recommendations, opinions or conclusions not factual in nature"). Here, the government argues that Rearden objected only to the probation officer's *recommendation* that the fine be imposed, rather than to any factual information the probation officer relied upon in reaching this conclusion. Whether this is so or not, here the PSR

presumed that Rearden would be able to obtain employment upon release from imprisonment based on his substantial work history. As we have discussed, Rearden's response that the prospects were uncertain created no conflict on which a finding was necessary.

## VI

Rearden challenges the district court's imposition of various conditions of supervised release. The parties agree that because Rearden failed to object to these conditions in district court, our review is only for plain error. *See Jordan,* 256 F.3d at 926.

■ A district court has discretion to order special conditions of supervised release pursuant to 18 U.S.C. § 3583(d) if the conditions are reasonably related to the factors set forth in 18 U.S.C. § 3553(a).[4] *United States v. Gallaher,* 275 F.3d 784, 793 (9th Cir.2001). In short, conditions are permissible if they are reasonably related to the goal of deterrence, protection of the public, or rehabilitation of the offender, and "involve no greater deprivation of liberty than is reasonably necessary for the purposes of supervised release." *United States v. T.M.,* 330 F.3d 1235, 1240 (9th Cir.2003) (internal quotation marks omitted).

Rearden argues that six of the conditions of supervised release were plainly improper, but first asserts that remand is

---

3. December 1, 2002 amendments to the Federal Rules of Criminal Procedure replaced Rule 32(c)(1) with Rule 32(i)(3).

4. Section 3553(a) states, in relevant part:

The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed—
(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant[.]
18 U.S.C. § 3553(a).

necessary because the district court failed to articulate on the record at sentencing the reasons for imposing each condition. We disagree that this is required. Rearden was well aware at sentencing what conditions would be imposed and why, as the PSR spelled out the relationship between them and the factors set forth in § 3583(d) in detail. We have no difficulty reviewing the conditions imposed on Rearden's supervised release and determining, in light of the record, whether the court abused its discretion.

## A

■ Rearden was required to participate in outpatient drug treatment and testing as directed by the probation office. *See* U.S.S.G. § 5D1.3(d)(4). He maintains that treatment of this sort is not related to the offense of conviction. However, a condition of supervised release need not relate to the offense as long as the condition satisfies the goal of deterrence, protection of the public, or rehabilitation. *See, e.g., Johnson,* 998 F.2d at 697; *T.M.,* 330 F.3d at 1240. It is not obvious that undergoing drug treatment would not be "beneficial both to [Rearden] and to society," as he was a recreational user of both marijuana and methamphetamine, he had a small amount of each in his possession when he was arrested, and a psychological profile prepared for sentencing indicates that Rearden occasionally used methamphetamine "to intensify the effect of his sexual experiences." *See United States v. Carter,* 159 F.3d 397, 401 (9th Cir.1998) (district court did not abuse its discretion by ordering defendant with no history of drug or alcohol abuse to submit to outpatient drug treatment as condition of supervised release, as in past defendant had attempted suicide by overdose on migraine medication and district court found his behavior had been "unstable").

## B

■ The court ordered Rearden to "participate in a psychological or psychiatric counseling and/or a sex offender treatment program as ordered by the Probation Department" at Rearden's expense. Rearden agreed to a counseling condition, but maintains that a condition which defers to the probation office the ability to choose the type and extent of such treatment is too vague to stand. However, that's what probation officers do; they are mandated to supervise offenders and to enforce a sentencing court's terms and conditions of supervised release and probation. *See* 18 U.S.C. § 3603; *see also United States v. Duff,* 831 F.2d 176, 178–79 (9th Cir.1987) (holding that a probation officer has the power to order a defendant to submit to drug testing even when the court had not explicitly imposed such a condition). Rearden also suggests that he should not have to pay for such services given his precarious financial condition, but no plain error appears.

## C

■ The court imposed a special condition that Rearden not possess any materials depicting sexually explicit conduct as defined in 18 U.S.C. § 2256(2). He argues that the restriction is vague and overly broad as it prohibits him from possessing legal adult pornography and limits his ability to compose forms of literature or possess stories he has written in the past.

■ A defendant's right to free speech may be abridged to " 'effectively address [his] sexual deviance problem.' " *See United States v. Bahe,* 201 F.3d 1124, 1134 (9th Cir.2000) (quoting *United States v. Bee,* 162 F.3d 1232, 1235 (9th Cir.1998)). In *Bee,* we affirmed the district court's imposition of a similar condition (prohibiting

the possession of "sexually stimulating or sexually oriented material") in a case where the defendant was convicted of sexual abuse of a minor. *Bee,* 162 F.3d at 1235; *cf. United States v. Guagliardo,* 278 F.3d 868, 872 (9th Cir.2002) (per curiam) (holding that condition prohibiting possession of "any pornography" without providing further guidance to probationer was unconstitutionally vague). While Rearden was not convicted of child molestation, the pornography he transmitted falls within the category of materials addressed by the special condition. Moreover, the offense conduct resulted from Rearden's involvement with Settlemyer, a dangerous pedophile, and their shared interest in extremely vile and graphic depictions of child rape and murder. In these circumstances the court did not plainly err in limiting Rearden's possession of materials depicting sexually explicit conduct because the condition furthered the goals of rehabilitating him and protecting the public. Finally, we have already held that the phrase "sexually explicit conduct" is neither vague nor overly broad. *See United States v. X–Citement Video, Inc.,* 982 F.2d 1285, 1288–89 (9th Cir.1992) (holding that definition of "sexually explicit conduct" set forth in prior version of 18 U.S.C. § 2256(2) survived vagueness and overbreadth challenges), *rev'd on other grounds,* 513 U.S. 64, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994); *United States v. Adams,* 343 F.3d 1024, 1034–1036 (9th Cir. 2003) ("sexually explicit conduct" in 18 U.S.C. § 2256(2) is neither constitutionally overbroad nor vague).

### D

■ The district court prohibited Rearden from frequenting or loitering within one hundred feet of schoolyards, parks, public swimming pools, playgrounds, youth centers, video arcade facilities, or other places primarily used by children under the age of eighteen. Rearden asserts that this condition is unreasonable because there is no evidence of his ever having engaged in improper contact with a minor and because he did not participate in the production of, or closely view, the child pornography he transmitted. However, there was evidence presented at trial from which the district court could conclude that Rearden posed a risk to children: Rearden told law enforcement officials that he has a sexual interest in children and that he has had this interest his entire life; Rearden testified that he used news stories about child murders or abductions to become sexually excited; and Rearden's own writings described in graphic detail the rape, abuse, and murder of children. Although Rearden testified that his sexual interest in children was strictly fantasy and that he had never before viewed images of child pornography, the district court was entitled not to accept his version of the facts. As this condition is reasonably related to the need to protect the public, the court did not plainly err in imposing it.

### E

■ The court prohibited Rearden's possession or use of a computer with access to any online service at any location without prior approval of the probation officer. Rearden claims that this condition is unreasonable, impermissibly vague, and overbroad.

We recognize the importance of the Internet for information and communication, but we disagree that the condition is plainly impermissible in Rearden's case as it leaves open the possibility of appropriate access. A number of circuits have upheld similar restrictions on a convicted sex offender's use of the Internet. *See, e.g., United States v. Paul,* 274 F.3d 155, 169–

70 (5th Cir.2001) (upholding complete ban); *United States v. Walser*, 275 F.3d 981, 988 (10th Cir.2001) (upholding prohibition where offender could use the Internet with permission of the probation office); *United States v. Ristine*, 335 F.3d 692, 696 (8th Cir.2003) (district court did not commit plain error in restricting defendant's use of computer and access to Internet where defendant had possessed and exchanged pornographic images with other Internet users and defendant could still possess computer with permission of his probation officer); *United States v. Zinn*, 321 F.3d 1084, 1093 (11th Cir.2003) (limited restriction on child pornography offender's Internet usage was reasonably related to legitimate sentencing considerations). Some have not. *See, e.g., United States v. Sofsky*, 287 F.3d 122, 126 (2d Cir.2002); *United States v. Freeman*, 316 F.3d 386, 391–92 (3d Cir.2003);[5] and *United States v. White*, 244 F.3d 1199, 1206 (10th Cir.2001); *see also United States v. Scott*, 316 F.3d 733, 737 (7th Cir.2003) (indicating that a record of "extensive abuse" of digital communications, as opposed to only a few images of child pornography stored on a computer, could justify an outright ban on the Internet). Courts upholding restrictions reason that there is a "strong link between child pornography and the Internet, and the need to protect the public, particularly children, from sex offenders," *Zinn*, 321 F.3d at 1092, while those rejecting prohibitions on Internet use are more impressed with the "virtually indispensable" nature of the Internet in today's world. *See Sofsky*, 287 F.3d at 126. We are persuaded that limiting Rearden's Internet access without prior approval of the Probation Office is reasonably related to the offense that involved e-mail transmissions of quite graphic child pornography, and to the important goal of deterring him during the period of supervision from reverting to similar conduct, and thus, to rehabilitation and protecting the public. The condition does not plainly involve a greater deprivation of liberty than is reasonably necessary for the purpose because it is not absolute; rather, it allows for approval of appropriate online access by the Probation Office.

### F

■ The district court imposed on Rearden the condition that "[a]ll computers, computer related devices, and the peripheral equipment used by defendant shall [be] subject to search and seizure and the installation of search and/or monitoring software and/or hardware including unannounced seizure for the purpose of search." Rearden argues that this condition is vague, as even a television, palm pilot, or watch could be considered "a computer or computer-related device." However, we see no reasonable possibility that "a computer," "a computer-related device" and "peripheral equipment" would be interpreted beyond the normal accouterments of one's personal computer such as disks and disk drives, devices for extra storage, etc. Beyond this, the condition is appropriate, *see Guagliardo*, 278 F.3d at 873, and serves the purpose of monitoring Rearden's progress under supervision.

### G

■ Finally, Rearden submits that the special conditions on use of his computer

---

5. In *Freeman* the Third Circuit distinguished its prior decision in *United States v. Crandon*, 173 F.3d 122, 125 (3d Cir.1999), upholding a condition that restricted all Internet access, as the defendant in *Crandon* had used the Internet to contact young children and solicit inappropriate contact with them, while there was no evidence that the *Freeman* defendant (convicted of receiving child pornography) had used the Internet in a similar way. *See Freeman*, 316 F.3d at 392.

and the Internet, as well as being near any location that a minor might frequent, are occupational restrictions that are unrelated to the offense and are for a longer term than necessary.

U.S.S.G. § 5F1.5(a) authorizes a sentencing court to impose occupational restrictions only if it first determines (1) there is a reasonably direct relationship between the defendant's occupation and the offense conduct, and (2) imposition of such a restriction is reasonably necessary to protect the public. An occupational restriction may only be in place for "the minimum time and to the minimum extent necessary to protect the public." U.S.S.G. § 5F1.5(b).

Here, the district court did not impose an occupational restriction. It did not prohibit Rearden from working in his previous profession as an art director or set decorator. Rearden merely asserts that any condition that restricts him from access to equipment he needs to engage in his profession amounts to an occupational restriction, but absent any showing that any of the conditions would have this effect, the court did not plainly err.

### Conclusion

The government put on an expert in the creation of visual effects to meet its burden of proving that the persons depicted in the images that Rearden transmitted by e-mail were actual children. The expert's uncontroverted opinion was that a believable photo-realistic human being could not be created digitally without it being obvious to him, that the images Rearden transmitted were not manipulated, and that they are consistent with photographs. This provided ample evidence to support the district court's finding that Rearden shipped pornography of an actual child.

The court properly enhanced Rearden's sentence for transmitting material that portrays sadistic conduct pursuant to U.S.S.G. § 2G2.2(b)(3). Subjection of a child to a sexual act that is necessarily painful (as the pictures portray here) is sadistic. A person of normal intelligence would realize this, so the enhancement is not vague as applied.

Rearden used a computer to communicate about raping and ravaging children, and to find and send graphic child pornography by e-mail over the Internet. In these circumstances, and absent any well-taken objection, the court may impose special conditions of supervised release that prohibit possession of materials depicting sexually explicit conduct, being around places frequently used by children, and having or using a computer with Internet access without prior approval of the Probation Office. Without question, such conditions in Rearden's case are reasonably related to legitimate goals of sentencing.

AFFIRMED.