**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Rose Marie WISE, Defendant–
Appellant.**

No. 03–30274.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 11, 2004.

Filed Dec. 8, 2004.

Anthony R. Gallagher, Federal Defender, Great Falls, MT, for the appellant.

David G. Dennis, Assistant U.S. Attorney, Great Falls, MT, for the appellee.

Before: D.W. NELSON, KLEINFELD, and FISHER, Circuit Judges.

KLEINFELD, Circuit Judge:

This case considers the notice required before imposing a condition of supervised release.

## Facts

Wise was convicted in 2003 of a crime of dishonesty. She obtained the birth certificate of a person who had been born around the same time as herself, but who had died as a child. Using the birth certificate, she got a Montana identification card in the dead child's name. Wise then went to the Social Security office in Great Falls, Montana and applied for a social security number, claiming somewhat implausibly (she was 47 years old) that she had never had a driver's license, and that neither she nor a spouse had ever filed income tax returns

or been claimed as a dependent on a federal tax return. The staff of the Social Security office suspected fraud. They contacted the Montana Bureau of Vital Statistics in Helena and learned that the person Wise claimed to be had been dead for 41 years. Investigators learned from the Postmaster in Winston, Montana that Wise had applied for a post office box under the phony name. Although Wise tried to hide her identity by wearing a red wig and sunglasses, the Postmaster and a customer recognized her and saw her leave in a car with the vanity license plate "R & R Wise."

Wise was indicted under 18 U.S.C. § 1001 for two counts of lying to the federal government for her lies to the Social Security Administration and the Postal Service. She pled guilty to the first count in exchange for dismissal of the second. At the change of plea, Wise told the judge that she had committed the crimes because her husband, who was in prison, had warned her that her former husband, also in prison, whom she had put there for molesting her children, would soon be released, and that she needed to change her identity so that he could not find her and her son.

The presentence report revealed a bizarre history. In 1988, Wise had called the Missoula County Sheriff's office and asked a deputy to monitor what she claimed would be a meeting between her and a burglar who had promised to return some of her stolen jewelry at the Frenchtown grade school. A deputy sheriff showed up to watch the transaction, but when nothing had happened for 30 minutes, he drove toward where Wise was waiting. As he approached, he heard a gunshot and saw Wise by her truck, holding a gun that was pointed at him. Wise then ran into an alley and motioned for the deputy to follow. When the deputy found Wise, he told her to drop her gun, but she instead raised it, pointed it at him, and ignored the deputy's commands to drop the gun until he threatened to shoot her. Wise claimed she had followed a "masked man" who had confronted her at the school but who had fled into the alley when he saw the deputy's car. The police later followed some footprints in the alley to a nearby residence where an individual admitted that he had made a deal with Wise to sell her some stolen jewelry for $50 at the grade school, but that he ran away after he saw the deputy's car and Wise began shooting. After a hung jury on a felony assault charge, Wise was allowed to plead to misdemeanor negligent endangerment. Nine years later in 1997, Wise pled guilty to transferring unauthorized articles into the Townsend, Montana jail.

These crimes, and other offenses such as leaving the scene of an accident, did not raise Wise's criminal history level beyond that of a first offender for purposes of the sentencing guidelines. But there was more. The family history section of the presentence report disclosed that Wise had married Gary Arnold Savage, her second husband, and a felon whom she had met while he was in jail. Wise reported Savage for sexually abusing her three children from her first marriage, but when a warrant was issued for Savage's arrest Wise ran away with him and the children. They were eventually apprehended in California when Wise was arrested for shoplifting. Savage pled guilty to the sexual abuse and was sentenced to 360 months imprisonment.

In 1989, while Savage was serving time for sexually abusing her children, Wise was caught smuggling child pornography to him in prison. According to the presentence report, Wise took pictures of "a minor female child, disrobed, and provided the pictures to Gary Savage," and that she

also "took pictures of another minor child and her own children, partially clothed or in minimal clothing, and attempted to provide those pictures to Savage." The report also states that Wise "encouraged at least one minor female child to sleep disrobed with herself on numerous occasions." These events prompted the state to remove the three children from Wise's custody and to give custody to their father, Wise's first husband. Wise was barred from any physical visitation with her children until she completed counseling and demonstrated that she was fit to be a parent.

Wise was referred for psychiatric evaluation in 1988. She told the psychiatrist that "if any sexual things happened with the children, the kids are making it up," or that it was a "satanic deal" in which Savage "lost his memory." The psychiatrist concluded that Wise was "quite close to being frankly psychotic," that she was "severely disturbed, and that she should not have custody of the children at all."

But Wise kept visiting Savage and was caught in 1990 trying to mail him a card that contained several photos of a minor female. She also tried to bring a female child to prison to visit Savage. In addition, the Missoula County Sheriff's Department got a report in 1988 that Wise had attempted to grope a fifteen-year-old boy's genitals, and had asked an eighteen-year-old girl to photograph Wise posing nude.

Wise divorced Savage and married again. She had another daughter with her third husband, then divorced him, fought for custody of her daughter, and then let two years go by in which she did not visit her daughter. She also put "Savage" on the daughter's birth certificate, rather than the name of the girl's father. Wise then married her fourth husband, a violent felon whom she had met in prison while visiting Savage, and had another child, a son named Ricky. Though the allegations had not been confirmed, the presentence report states that the Montana Department of Health and Human Services offices in Great Falls and Bozeman "have received allegations that Ricky is being physically and emotionally abused."

Wise's lurid history, however, did not generate any criminal history points, so Wise stayed at the low end of the sentencing guidelines, with a range of zero to six months. Neither side filed any objections to the presentence report, so the judge accepted its findings. Defense counsel argued for probation so that Wise could care for her five-year-old son Ricky. The government recommended six months because of the sophistication of the scheme. Defense counsel, however, argued that Wise's mental and emotional problems showed that her crime had not been a well thought out scheme, and suggested probation with mental health treatment. The judge imposed a six month sentence.

This appeal arises, not out of the six months, but out of two special conditions that the judge attached to the three-year supervised release period to follow Wise's six months of incarceration. The presentence report had not listed these special conditions among its recommendations, and counsel had no written or oral notice, so far as the record shows, that the court would be considering them.

One condition (number nine) prohibits Wise from having contact with children, including her five-year-old son, without approval of the Probation Office, and subjected the custody of her son to the state office that provides for dependent children:

9. The Defendant shall not be allowed to reside in the home, residence, or be in the company of any child under the age of 18 without prior approval of United States Probation. The Montana Department of Public Health and Human

Services (DPHHS) shall approve the custody and contact with the defendant's minor son, Richard "Ricky" Nelson Wise, Jr.

The other condition (number eight) prohibits Wise from possessing pornography and other sexually stimulating material:

> 8. The Defendant shall not possess any pornographic, sexually oriented or sexually stimulating materials, including visual, auditory, telephonic, or electronic media, and computer programs or services.

At sentencing Wise objected to condition number nine, regarding contact with children and custody of her five-year-old. Wise appeals imposition of both conditions.

### Analysis

### I. The Child Contact and Custody Condition

■ At sentencing Wise objected to the condition that prohibits her from having contact with children and custody of her son without approval. We review a condition of supervised release for abuse of discretion.[1] Wise argues that the court abused its discretion because the condition is unrelated to her offense of conviction, she had no notice that it was contemplated, and the record did not support it.

### A. Relation of a Condition to the Offense of Conviction

■ A condition of supervised release does not have to be related to the offense of conviction. The applicable statute requires the judge, at sentencing, to consider the need "to protect the public from further crimes of the defendant." [2] That language does not limit the court to looking only at the offense already committed, but rather requires the court to look forward in time to crimes that may be committed in the future. Under the statute, the court may order conditions of supervised release, not only if they are related to the offense of conviction, but also if they are "reasonably related" to other factors, such as the need "to protect the public from further crimes of the defendant." [3]

■ One value of a criminal prosecution and presentence report is that they expose to judicial intervention other problems (such as alcoholism and drug addiction) and other crimes that may need to be addressed in sentencing for the offense of conviction. This is not to say that the "wide discretion" of the district court is unfettered. "[T]he conditions imposed are permissible only if they are reasonably related to the goal of deterrence, protection of the public, or rehabilitation of the offender," and even if conditions "meet the above requirements, they still can involve 'no greater deprivation of liberty than is reasonably necessary for the purposes' of supervised release." [4]

■ Here, although the district court did not say so, we can infer that the condition prohibiting residing with, maintaining custody of, or being in the presence of children was responsive to Wise's apparent mental problems and her history involving sexual abuse of children, and was related to the goal of protecting children, who constitute part of "the public." That the condition was unrelated to Wise's offense of trying to defraud the Social Security Administration into helping her establish a fake identity is not of itself a sound reason

---

1. *United States v. T.M.,* 330 F.3d 1235, 1240 n. 2 (9th Cir.2003).

2. 18 U.S.C. § 3553(a)(2)(C).

3. 18 U.S.C. §§ 3583(d)(1), 3553(a)(2)(C).

4. *T.M.,* 330 F.3d at 1240 (quoting 18 U.S.C. § 3583(d)(2)).

to vacate the condition. Nevertheless, there must be a nexus between the past behavior and the public safety rationale sufficient to justify the specific conditions imposed. In *United States v. T.M.*, for example, this court rejected a similar, but less extreme condition of release when the defendant had a history of inappropriate behavior with children, concluding that "even considered cumulatively, [defendant's past] do[es] not establish a reasonable relationship between his sexually-related conditions of supervised release and either deterrence, public safety, or rehabilitation."[5]

## B. Notice

■ So far as we can tell from the record, until the judge pronounced sentence Wise and her attorney had no notice that the condition regarding contact with children was under consideration. The presentence report did not suggest it, the judge did not announce that he was contemplating it, and nothing else in the record suggested the condition as a possibility before it was imposed.

Federal Rule of Criminal Procedure 32(i)(1)(C) requires the district court at sentencing to allow the attorneys to comment on the probation officer's determinations "and other matters relating to an appropriate sentence." Rule 32(i)(4) requires the court to allow both sides' attorneys and the defendant personally to speak "[b]efore imposing sentence." In *Burns v. United States*,[6] the Supreme Court held that, by implication, Rule 32 requires the district court to give reasonable notice to the parties that it is contemplating an upward departure on a ground not previously identified in the presentence report or a prehearing submission by the government as a ground for upward departure. Wise's attorney and Wise could not argue about the custody and contact condition if they didn't even know that it was being considered. The Supreme Court in *Burns* reasoned that "it makes no sense to impute to Congress an intent that the defendant have the right to *comment* on the appropriateness of a *sua sponte* departure but not the right *to be notified* that the court is contemplating such a ruling."[7]

In *United States v. Lopez*,[8] we held that a defendant did *not* have the right to notice before the court *sua sponte* imposed a supervised release condition of participation in a program of mental health treatment. We distinguished *Burns* on the ground that the mental health condition was not a departure from the guidelines, but was contemplated by them, because participation in a mental health program is listed in the discretionary conditions of supervised release in the guidelines, of which all defendants have notice.

The condition here—basically no contact with children and no custody of her own child without approval—falls on the *Burns* rather than the *Lopez* side of the line. Though it is not a departure as in *Burns*, it is also not a listed condition as in *Lopez*. The sentencing guideline on conditions of supervised release lists a number of conditions that should always be included,[9] and several more conditions (including the one

---

**5.** *Id.* at 1241.

**6.** *Burns v. United States*, 501 U.S. 129, 111 S.Ct. 2182, 115 L.Ed.2d 123 (1991).

**7.** *Id.* at 135–36, 111 S.Ct. 2182 (emphasis in original).

**8.** *United States v. Lopez*, 258 F.3d 1053 (9th Cir.2001).

**9.** U.S. Sentencing Guidelines Manual §§ 5D1.3(a), (c).

at issue in *Lopez*) are recommended in certain circumstances.[10] The condition imposed in this case, prohibiting custody and contact with minors, is not on these lists.

Custody of one's own child "is an important interest that 'undeniably warrants deference and, absent a powerful countervailing interest, protection.' "[11] Though it is not an upward departure, most parents would probably regard loss of the custody and society of their own children as more important and severe than an upward departure. So far as the record reveals, Wise and her attorney (and government counsel) had no notice of the possibility that she would lose her son when she went in for sentencing for lying to the Social Security office.

■ Where a condition of supervised release is not on the list of mandatory or discretionary conditions in the sentencing guidelines, notice is required before it is imposed, so that counsel and the defendant will have the opportunity to address personally its appropriateness. The form and timing of notice are left to the discretion of the district court. For a condition such as the one at issue here, advance written notice would work best, both to enable both sides to marshal their evidence and arguments, and (more importantly in many cases) to allow negotiation of a condition upon which the government and the defense could agree. It may be enough in many cases for the judge to mention orally at the sentencing hearing that he is contemplating a condition, in case either party wishes to comment or request a continuance. It is not enough notice, however, first to impose the sentence, and then to invite counsel to comment, at least where counsel objects as occurred here. That is no notice at all. Talking a judge out of a decision he has already made is a different and harder task than persuading him not to make it. Also, such an approach prevents negotiation of a condition more precisely tailored to the legitimate interests of both sides. Our conclusion that notice is required for conditions not in the sentencing guidelines list is consistent with the decisions of other circuits that have ruled on the question.[12]

## C. Justification

Wise also argues that the material in the presentence report, adopted as findings of fact without objection, did not furnish a sufficient basis for the custody and society condition. Because we must vacate and remand on account of the lack of notice, and the record may be further developed on remand, we have no occasion to decide that issue.

## II. The Prohibition of Pornographic Materials Condition

Wise did not object to condition eight, which prohibits her from possessing "any pornographic, sexually oriented or sexually stimulating materials." She nevertheless contends that imposing the condition was plain error under *United States v. Guagliardo*.[13] Because we vacate the sentence due to lack of notice for condition nine, to which Wise objected, we need not decide

---

10. *Id.* § 5D1.3(d).

11. *Lassiter v. Dep't of Soc. Servs. of Durham County, North Carolina*, 452 U.S. 18, 27, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981) (quoting *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972)). *See Calabretta v. Floyd*, 189 F.3d 808, 820 (9th Cir.1999).

12. *See United States v. Angle*, 234 F.3d 326, 347 (7th Cir.2000); *United States v. Bartsma*, 198 F.3d 1191, 1199–1200 (10th Cir.1999); *United States v. Coenen*, 135 F.3d 938, 943 (5th Cir.1998).

13. *United States v. Guagliardo*, 278 F.3d 868 (9th Cir.2002).

this question. If there is notice and objection, the parties and the court will have to work their way through our cases on similar conditions.[14] Because the prohibition on sexually oriented and sexually stimulating materials might arguably include women's magazines with sexual how-to articles and bodice-ripper romance novels available at any grocery store,[15] some negotiation and tailoring, after notice and before the sentencing hearing, may be useful to the parties.

**VACATED and REMANDED.**

---

**14.** *See Guagliardo,* 278 F.3d at 872; *United States v. Bee,* 162 F.3d 1232 (9th Cir.1998).

**15.** *Cf. Grayned v. City of Rockford,* 408 U.S. 104, 108–09, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); *Guagliardo,* 278 F.3d at 872; *United States v. Loy,* 237 F.3d 251, 266–67 (3d Cir. 2001); *United States v. Schave,* 186 F.3d 839, 843 (7th Cir.1999).