**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
      *Plaintiff-Appellee,*

v.

PIO JAMES QUINZON, AKA J.R.,
      *Defendant-Appellant.*

No. 10-50240

D.C. No.
2:09-cr-00903-
SJO-1

OPINION

Appeal from the United States District Court
for the Central District of California
S. James Otero, District Judge, Presiding

Argued and Submitted
May 4, 2011—Pasadena, California

Filed July 11, 2011

Before: Harry Pregerson, Raymond C. Fisher, and
Marsha S. Berzon, Circuit Judges.

Opinion by Judge Berzon

## COUNSEL

Sean K. Kennedy, Federal Public Defender, Jonathan D. Libby (argued), Deputy Federal Public Defender, Los Angeles, California, for the defendant-appellant.

André Birotte, Jr., United States Attorney, Robert E. Dugdale and Jean-Claude André (argued), Assistant United States Attorneys, Los Angeles, California, for the plaintiff-appellee.

## OPINION

BERZON, Circuit Judge:

Pio James Quinzon was convicted of possession of child pornography. He now appeals a judgment that includes, as a condition of supervised release, a requirement that monitoring technology be installed on his computer-related devices.

I

In July 2009, the United States Secret Service received information that someone in a residence in Lakewood, Cali-

fornia was downloading child pornography from the Internet, and so obtained and executed a search warrant of the home. While doing so, the agents found Quinzon living there and seized his computer. Quinzon admitted, in an interview conducted during the search, that he had downloaded child pornography using peer-to-peer file sharing programs. A later search of his computer confirmed there was child pornography on it.

Following the search and his admission, Quinzon pled guilty to one count of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). Quinzon's plea agreement included a limited waiver of appeal, in which he agreed, among other things, not to appeal various conditions of supervised release the district court might choose to impose, provided that the term of supervised release was ten years or fewer. One of the conditions specified as not subject to appeal was that "[a]ll computers, computer-related devices, computer storage media, and peripheral equipment used by defendant shall be subject to . . . the installation of search and/or monitoring software and/or hardware."

A presentence report was circulated prior to the sentencing hearing, but the probation officer's recommended conditions of supervised release were transmitted to the court in a separate, confidential letter and not disclosed to the parties. In Quinzon's written sentencing position, he noted that the recommendations were confidential and requested that, "[i]f the Court is considering imposing any special conditions of supervised release . . . those conditions be disclosed sufficiently in advance of the sentencing to allow a meaningful opportunity to object to the proposed conditions." The district court did not respond to Quinzon's request.

The sentencing hearing was held in May 2010. During the hearing, Christopher Dybwad, counsel for Quinzon, acknowledged that the appeal waiver in Quinzon's plea agreement listed some possible conditions of supervised release, and he

stated that if the court was contemplating imposing any of those conditions, he wanted a chance to object to some of them. Dybwad also raised "objections for the record based on what [he] underst[oo]d probation to typically recommend in these cases," emphasizing, in particular, his concern about possible "computer-use conditions." After some back and forth between counsel and the court, during which Dybwad was somewhat successful in narrowing certain of the conditions not pertinent to Quinzon's appeal, the court announced it was considering "Condition Number 7," which provided that " '[t]he defendant shall be subject to the installation of monitoring software and hardware.' "

Dybwad objected to that condition, "because of the availability of something called, 'filtering software,' which is a less restrictive alternative than the monitoring software and hardware." The prosecutor responded that filtering software would be inadequate, because it could be circumvented and would not track communications *sent* by Quinzon. Dybwad, however, disagreed: "The concern raised by monitoring software," Dybwad insisted, "is if you analogize a computer to a diary, it's essentially—it's allowing someone to see every aspect of your thoughts and a condition that has been found in the past to be overbroad and not as narrowly tailored as it could be given the available software."

After listening to the parties' arguments, the court announced the sentence: 84 months of imprisonment, followed by thirty years of supervised release, during which Quinzon would be subject to sixteen conditions. Despite Dybwad's objections, the court imposed the following condition: "The defendant shall be subject to the installation of monitoring software and hardware. The defendant shall pay the cost of the computer monitoring, in an amount not to exceed $30 per month per device connected to the internet."

Quinzon, who is not scheduled to be released from custody until January 1, 2016, appealed. As the conditions of super-

vised release apply for thirty years rather than ten, the appeal waiver in the plea agreement is not applicable.

## II

We first reject Quinzon's argument that his conditions of supervised release should be vacated because he was not afforded adequate notice that the district court was considering imposing them.

Federal Rule of Criminal Procedure 32(i)(1)(C) requires district courts at sentencing to "allow the parties' attorneys to comment on the probation officer's determinations and other matters relating to an appropriate sentence." Rule 32(i)(4)(A)(i), in turn, requires courts, before imposing sentence, to "provide the defendant's attorney an opportunity to speak on the defendant's behalf."

[1] We held in *United States v. Wise*, 391 F.3d 1027 (9th Cir. 2004), that Rule 32 also provides defendants the right to receive *notice* that a condition of supervised release "not on the list of mandatory or discretionary conditions in the sentencing guidelines" is under consideration before it may be imposed. *Id.* at 1033. The defendant in *Wise* had been convicted of lying to the federal government by attempting to obtain a Social Security number under false pretenses. *Id.* at 1028-29. As a condition of her supervised release, Wise lost custody of her son and was prohibited from having contact with him without prior approval from the Probation Office and from the state office that provided for dependent children. *Id.* at 1030-31. That condition was surprising, not only because it was unrelated to the crime of conviction, but also because (1) the condition was not recommended in the presentence report; (2) the judge did not announce before imposing sentence that he was contemplating it; (3) the U.S. Sentencing Guidelines Manual made no mention of such a condition; (4) and "nothing else in the record suggested the condition as a possibility before it was imposed." *Id.* at 1032-

33. Without notice of the custody condition, Wise's attorney made no arguments against it before imposition of sentence. *Id.*

Given the circumstances, and in light of then-existing Supreme Court precedent interpreting Rule 32 to require that courts provide notice before departing from sentencing guidelines ranges, *see Burns v. United States*, 501 U.S. 129 (1991), *limited by Irizarry v. United States*, 553 U.S. 708 (2008), we vacated Wise's sentence due to lack of notice.[1] 391 F.3d at 1033. The notice requirement we articulated is a flexible one: "The form and timing of notice are left to the discretion of the district court," and "[i]t may be enough in many cases for the

---

[1]Rule 32(h), promulgated in 2002, codified the holding in *Burns* that notice must be given before a court may "depart" from the applicable sentencing range. *See United States v. Evans-Martinez*, 530 F.3d 1164, 1169 (9th Cir. 2008). The Supreme Court in *Irizarry*, however, held that, post-*United States v. Booker*, 543 U.S. 220 (2005), Rule 32 no longer requires a sentencing judge to provide notice before imposing a sentence of imprisonment at "variance" with the Federal Sentencing Guidelines, and that Rule 32(h) is limited to "departure[s]," which "refers only to non-Guidelines sentences imposed under the framework set out in the Guidelines." *Irizarry*, 553 U.S. at 714-15. The government observes that *Wise* relied on *Burns*. It then insists that *Burns* was later overruled by *Irizarry*, and that the holding in *Wise* was therefore effectively overruled as well. Both *Irizarry* and *Burns*, however, dealt with terms of imprisonment, and neither addressed conditions of supervised release. *See Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc) (holding that if "the reasoning or theory of our prior circuit authority is clearly irreconcilable with the reasoning or theory of intervening higher authority, a three-judge panel should consider itself bound by the later and controlling authority, and should reject the prior circuit opinion as having been effectively overruled"). As *Wise* dealt with uncontemplated conditions of supervised release, while *Irizarry* concerned only terms of imprisonment within the statutory maximum, it is not at all clear that there is sufficient incompatibility between the two to satisfy the *Miller* standard and allow a three-judge panel of this court to overrule *Wise*. Still, because we reject Quinzon's claim that he was not afforded adequate notice, we need not, and do not, address the government's suggestion concerning the need for notice before the imposition of conditions of supervised release not listed in the Guidelines.

judge to mention orally at the sentencing hearing that he is contemplating a condition, in case either party wishes to comment or request a continuance." *Id.*

**[2]** Given that pragmatic standard, Quinzon received adequate notice that the computer monitoring condition was under consideration.[2] The district court announced at the sentencing hearing that it was considering imposing a monitoring condition, and both parties had an opportunity at that time to comment. Dybwad apparently anticipated that the court might impose computer monitoring, as he presented an argument regarding its intrusiveness and "point[ed] the court's attention" to *United States v. Lifshitz*, 369 F.3d 173 (2d Cir. 2004), a case raising concerns about computer monitoring

It is no mystery how Dybwad predicted that the condition might come up: Several cases have approved, in some form, computer monitoring imposed on defendants convicted of child pornography offenses, *see United States v. Goddard*, 537 F.3d 1087, 1090 (9th Cir. 2008); *United States v. Rearden*, 349 F.3d 608, 620 (9th Cir. 2003), and the condition was acknowledged as a possibility in Quinzon's plea agreement. There may be instances in which the inclusion in a plea agreement of potential conditions of supervised release will not reasonably put a defendant on notice that they are likely to be considered by the court. Here, though, the plea agreement listed only a few conditions, all of which are either included

---

[2]The only substantive challenge Quinzon makes on appeal is to the breadth of the computer monitoring condition, which we address below. If he did not receive notice of any other condition of supervised release, or if he was entitled to and did not receive specific notice that he would be obligated to pay the cost of computer monitoring, it was harmless error, as he has not explained how any such error affected his substantial rights. *See* Fed. R. Crim. P. 52(a) ("Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."); *cf. United States v. Mack*, 200 F.3d 653, 657 (9th Cir. 2000) (applying harmless error analysis when considering whether defendants were denied their Rule 32 right to allocution).

in the Sentencing Guidelines Manual or are often imposed in child pornography cases.

**[3]** True, the court in *Wise* indicated that "advance written notice would work best" in certain cases. 391 F.3d at 1033. For instance, such notice was required in *Wise* itself, because the defendant could not have predicted that she would lose custody of and contact with her own child absent approval by the Probation Office and a state office. But for run-of-the-mill cases, *Wise* indicated that raising a condition during a sentencing hearing would likely be sufficient. *Id.* As Quinzon's attorney reasonably could—and did—predict that the condition would be imposed, and given that the district court did raise the condition at the hearing before imposing the sentence and listened to objections to the condition, Quinzon was afforded adequate notice.[3]

Having determined that Quinzon's procedural rights were not violated, we turn to his substantive challenge to the computer monitoring condition.

### III

District courts have significant discretion in crafting conditions of supervised release pursuant to 18 U.S.C. § 3583(d). *See, e.g.*, *Goddard*, 537 F.3d at 1089. That discretion, however, is not limitless. Courts must ensure that each condition imposed:

(1) is reasonably related to the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D);

(2) involves no greater deprivation of liberty than is

---

[3]Quinzon summarily asserts that his due process rights were violated, because he did not receive notice and a chance to be heard. We deny that claim for the same reasons we hold his rights under Rule 32 not violated.

reasonably necessary for the purposes set forth in section 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D); and

(3) is consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a).

18 U.S.C. § 3583(d)(1)-(3).

Quinzon claims that the computer monitoring condition imposed on him occasions a greater deprivation of liberty than is reasonably necessary, *see id.* § 3583(d)(2), because the term "monitoring" is imprecise and encompasses a broad swath of surveillance methods, some of which would be unnecessarily intrusive.

**[4]** Quinzon's contention finds some support in our case law and that of the Second Circuit. We have acknowledged that "monitoring software and/or hardware takes many forms, with greatly varying degrees of intrusiveness." *United States v. Sales*, 476 F.3d 732, 737-38 (9th Cir. 2007); *see Lifshitz*, 369 F.3d at 191-92 (surveying methods of monitoring and finding that "products and techniques currently available diverge vastly in their breadth, and in their implications for computer users' privacy"). Some monitoring software, for instance, records all computer-based activities, "including those performed locally without connection to the Internet or any network—such as . . . word processing activities." *Lifshitz*, 369 F.3d at 191. Other monitoring targets only Internet-related activity, by, for example, "rel[ying] on records from the Internet Service Provider ('ISP'), through whom an account user's requests for information or e-mails are routed." *Id.* Technologies, moreover, vary within these categories: "[S]ome software focuses attention upon specific types of unauthorized materials, whereas other kinds monitor all activities engaged in by the computer user." *Id.*

**[5]** We have no doubt further classifications and descriptions of computer surveillance technology could be made, and

that such explications will evolve as do the pertinent technologies. For now, suffice it to say that the term "monitoring" is broad, encompassing some methods that are quite intrusive and therefore, perhaps, problematic. As the Second Circuit put it in *Lifshitz*, "[c]onstant inspection of the documents that [the defendant] creates on his computer might be . . . like searching his diary or inspecting his closets." *Id.* at 191-92.

In *United States v. Sales*, we were required to address whether a condition of supervised release employing the broad term "monitoring," without qualification, occasioned a greater deprivation of liberty than reasonably necessary. The defendant in *Sales* was convicted of counterfeiting federal reserve notes. As a condition of his supervised release, he was subject to the installation of "monitoring software and/or hardware." 476 F.3d at 734. We recognized that "[a] computer monitoring condition in some form may be reasonable," *id.* at 737, but because the condition at issue gave "no indication as to what kinds or degrees of monitoring [were] authorized," we vacated it and remanded for further clarification. *See id.* at 737-38. Quinzon urges us to do the same here.

In response, the government relies on *Rearden*, 349 F.3d 608 and *Goddard*, 537 F.3d 1087, maintaining that they approve broad computer monitoring conditions without further specification. Were that so, there might well be a conflict between those two cases and *Sales* requiring en banc consideration to resolve. *See Atonio v. Wards Cove Packing Co., Inc.*, 810 F.2d 1477, 1478-79 (9th Cir. 1987) (en banc) (holding "that the appropriate mechanism for resolving an irreconcilable conflict is an en banc decision"). But in fact there is no such conflict, as *Rearden* and *Goddard* did not address the issue decided in *Sales*.

At issue in *Rearden*, decided four years prior to *Sales*, was a condition subjecting all of a defendant's "computer related devices" to "the installation of search and/or monitoring software and/or hardware." 349 F.3d at 621. We dismissed the

defendant's argument that the term "computer-related device" was vague, holding that there was no possibility the term "would be interpreted beyond the normal accouterments of one's personal computer." *Id.* We also, as the government points out, concluded that "[b]eyond this, the condition is appropriate and serves the purpose of monitoring [the defendant's] progress under supervision." *Id.* (internal citation omitted).

We did not, however, address *how* monitoring would be done, as opposed to *what* "computer or computer-related devices" would be monitored. Our passing statement about the appropriateness of monitoring, therefore, was not a blanket rejection of future challenges to computer monitoring different from the one presented and decided. *Cf. United States v. Esparza*, 552 F.3d 1088, 1091 n.4 (9th Cir. 2009) (per curiam) (acknowledging prior decisions that had approved a condition similar to the one before the court, but noting those decisions addressed different challenges to the condition).

*Goddard* was also a limited decision, confined to issues different from the one raised here. There, we disapproved one part of a computer monitoring condition, requiring the defendant to obtain prior approval before making any software modifications. We observed that "[s]oftware on any computer connected to the Internet changes constantly," and reasoned that the defendant could not be expected to contact his probation officer every time an update occurred. 537 F.3d at 1090. We also cited *Rearden* for the proposition that "[s]ubjecting computers and other devices able to access the Internet to monitoring, search and seizure is critical to preventing [the defendant] from viewing or obtaining child pornography." *Id.* Like *Rearden*, *Goddard* did not discuss what form monitoring would take, and did not address the argument presented here and accepted in *Sales*—that the term "monitoring" is too vague to assess accurately whether it constitutes a greater deprivation of liberty than reasonably necessary. Neither case,

therefore, approved monitoring in all its forms, and, accordingly, neither forecloses Quinzon's challenge.

**[6]** Nonetheless, despite the range of methods encompassed within the umbrella of computer monitoring, and recognizing that our case law does not preclude challenges to the breadth of monitoring conditions, we decline to remand for clarification of the condition at issue here as we did in *Sales*. Importantly, Quinzon's condition "does not have to be read as broadly as [he] suggests it might be read." *Goddard*, 537 F.3d at 1091. Unlike the monitoring condition we vacated and remanded for clarification in *Sales*, Quinzon's condition provides he "shall pay the cost of the computer monitoring, in an amount not to exceed $30 per month per device *connected to the internet*." (emphasis added). We take the limitation on Quinzon's payment responsibilities to indicate the district court meant to target only his Internet-related computer conduct; computer activities not related to the Internet are not to be monitored.

Such an interpretation may not be self-evident, but it is more than reasonable in the context of Quinzon's crime of conviction and other computer-related conditions. First, monitoring only Internet-related activities "comports with the district court's overall intention" of preventing Quinzon from accessing and sharing child pornography. *Goddard*, 537 F.3d at 1090-91 (avoiding a potential overbreadth problem by construing a condition that the "defendant shall use computers/devices only within the scope of his employment" to mean that "*at work*, [the defendant] shall use computers and computer-related devices only within the scope of his employment"). There is no reason to think surveillance of Quinzon's local use of, for instance, word processing or financial management software would deter future offenses.

Second, the text and substance of Quinzon's other conditions also support our reading. Condition 5, for example, requires Quinzon to disclose to the probation officer all

"[c]omputers and computer-related devices . . . that can access, or can be modified to access, the internet, electronic bulletin boards, and other computers." Condition 6, similarly, subjects to search and seizure "[a]ll computers, computer-related devices and their peripheral equipment used by" Quinzon. In contrast to these conditions, the monitoring condition is more narrowly tailored: It speaks only of devices "connected to the internet," not of "[a]ll computers," or even computers "that *can* access, or *can be modified* to access, the internet." To the extent Quinzon could engage in prohibited conduct using hardware or software not related to the Internet —for instance, storing child pornography obtained directly from a camera, external hard drive, or computer disk—such conduct already is encompassed within the condition subjecting his computers to search and seizure.

**[7]** So construed, it was not an abuse of discretion for the district court to determine that monitoring Quinzon's Internet-related activities "involves no greater deprivation of liberty than is reasonably necessary" under 18 U.S.C. § 3583(d)(2). Some of the monitoring programs Quinzon fears would be overly intrusive could not be used. For example, technology that records *all* computer activity, such as programs Quinzon tells us take a snapshot of computer use as frequently as once per second, would be inconsistent with the condition, as they would capture non-Internet related conduct. *Cf. Lifshitz*, 369 F.3d at 193 n.11 (suggesting as a way to tailor a monitoring condition that it be limited to "Internet-related activity and e-mail").

Additionally, unlike the defendant in *Sales*, who was convicted of an offense that "in no way involved or relied upon the internet," 476 F.3d at 736, Quinzon admitted to using the Internet to search for and download child pornography. Given that admission and "the 'strong link between child pornography and the Internet,' " *id*. at 736 n.2 (quoting *Rearden*, 349 F.3d at 621), Quinzon's condition, even if interpreted to encompass techniques that might have been inappropriate in

the case of the counterfeiter in *Sales*, is not overbroad applied to him. It is not obviously more intrusive than conditions we have found permissible in other child pornography cases. *See Goddard*, 537 F.3d at 1089-90 n.2, 1090 n.3 (approving, in the case of a defendant convicted of a child pornography offense, conditions (1) permitting "use only [of] those computers and computer-related devices . . . as approved by the Probation Officer," and (2) subjecting "[a]ll computers, computer-related devices, and their peripheral equipment . . . to search and seizure . . . including unannounced seizure for the purpose of search"); *Rearden*, 349 F.3d at 621 (approving similar conditions).

**[8]** The district court, moreover, was not required to, nor could it now, specify precisely what monitoring hardware or software, or other type of computer surveillance technology, should be used. Quinzon is not scheduled to be released for approximately five years, and the monitoring condition is to be in place for an additional thirty. It would be impossible for the district court at this point to identify exactly *how* surveillance of Quinzon's computer activities should be accomplished, as the pertinent technologies surely will evolve before Quinzon's release and during his period of supervision. Once it determined that Quinzon's Internet-related computer activities should be subject to the installation of surveillance hardware or software, leaving to the probation officer the details of what technologies should be used was appropriate. *Cf. United States v. Stephens*, 424 F.3d 876, 883-84 (9th Cir. 2005) (acknowledging that district courts may delegate to probation officers the task of choosing particular drug or psychological treatment programs).

**[9]** At the same time, and complementary to that delegation, we interpret the computer monitoring condition as imposing on the Probation Office and probation officer a continuing obligation to ensure not only the efficacy of the computer surveillance methods used, but also that they remain reasonably tailored so as not to be unnecessarily intrusive.

Probation officers serve as an " 'arm of the court,' " *United States v. Bernardine*, 237 F.3d 1279, 1283 (11th Cir. 2001) (quoting *United States v. Ruiz*, 580 F.2d 177, 178 (5th Cir. 1978)), and act as "liaison[s] between the sentencing court, which has supervisory power over the defendant's term of supervised release, and the defendant, who must comply with the conditions of his supervised release." *United States v. Davis*, 151 F.3d 1304, 1306 (10th Cir. 1998); *see also Stephens*, 424 F.3d at 880-81 & n.2. It is difficult for the district court to wade into the details of how best to monitor Quinzon's Internet activities; the Probation Office and probation officer play an invaluable role by doing so in the first instance. Because the substance of the computer monitoring condition turns on evolving technological considerations, implicit in the condition is the requirement that the Probation Office and probation officer take into account and use newly developed technology that is as or more effective at monitoring prohibited conduct, yet not unnecessarily intrusive. In other words, the Probation Office and probation officer must themselves make adjustments as technology evolves so that the methods used continue to "involve[ ] no greater deprivation of liberty than is reasonably necessary." 18 U.S.C. § 3583(d)(2).

**[10]** Finally, as new technologies emerge or circumstances otherwise change, either party is free to request that the court modify the condition of supervised release. *See* 18 U.S.C. § 3583(e)(2); Fed. R. Crim. P. 32.1(c) & advisory committee's note to 1979 Addition (acknowledging "conditions should be subject to modification, for the sentencing court must be able to respond to changes in the probationer's circumstances as well as new ideas and methods of rehabilitation"); *United States v. Gross*, 307 F.3d 1043, 1044 (9th Cir. 2002) (noting that § 3583(e) allows "a sentencing court . . . to respond to changes in the defendant's circumstances that may render a previously imposed condition of release either too harsh or inappropriately tailored"); *United States v. Miller*, 205 F.3d 1098, 1101 (9th Cir. 2000) (" 'Section 3583(e)

provides the district court with retained authority to revoke, discharge, or modify terms and conditions of supervised release . . . in order to account for new or unforeseen circumstances.' " (quoting *United States v. Lussier*, 104 F.3d 32, 36 (2d Cir. 1997) (modification in original))). We agree with the Second Circuit that changing technology "is an appropriate factor to authorize a modification of supervised release conditions under Section 3583(e)." *United States v. Balon*, 384 F.3d 38, 47 (2d Cir. 2004). In situations like this one, where technological considerations prevent specifying in detail years in advance how a condition is to be effectuated, district courts should be flexible in revisiting conditions imposed to ensure they remain tailored and effective.

With those principles in mind, we affirm Quinzon's sentence.

**AFFIRMED.**