**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

OLIVIA REYES,
*Defendant-Appellant.*

No. 20-50016

D.C. No.
3:19-cr-02272-LAB-1

OPINION

Appeal from the United States District Court
for the Southern District of California
Larry A. Burns, District Judge, Presiding

Argued and Submitted March 3, 2021
Pasadena, California

Filed November 26, 2021

Before: Stephen A. Higginson,[*] Andrew D. Hurwitz, and
Daniel P. Collins, Circuit Judges.

Opinion by Judge Collins;
Concurrence by Judge Higginson

---

[*] The Honorable Stephen A. Higginson, United States Circuit Judge for the U.S. Court of Appeals for the Fifth Circuit, sitting by designation.

**SUMMARY**[**]

**Criminal**

The panel affirmed in part and vacated in part a sentence, and remanded, in a case in which the defendant pleaded guilty to unlawful importation of methamphetamine and heroin.

The defendant's principal contention was that the district court erred by failing to give her advance notice before imposing a special condition of supervised release that requires her to submit to suspicionless searches by any law enforcement officer. The defendant asserted that this contravened *United States v. Wise*, 391 F.3d 1027 (9th Cir. 2004), which held that, "[w]here a condition of supervised release is not on the list of mandatory or discretionary conditions in the sentencing guidelines, notice is required before it is imposed." The Government contended that *Wise* was effectively overruled by the Supreme Court in *Irizarry v. United States*, 553 U.S. 708 (2008), which held that, before imposing a custodial sentence, a district court is not required to give advance notice that it is considering varying upwards from the applicable sentencing range under the Sentencing Guidelines. Rejecting the Government's contention that Reyes did not adequately preserve her objection and that the panel should therefore review the lack-of-notice issue only for plain error, the panel considered the issue de novo. Reviewing the relevant caselaw leading up to *Wise*, as well as the later decision in *Irizarry*, the panel concluded that *Wise* is easily reconciled with *Irizarry*, and

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

remains binding. The panel held that the district court therefore erred by failing to give notice that it was contemplating imposing its broad search condition prior to imposing that condition in its oral pronouncement of sentence.

Reviewing for plain error the defendant's contention that the district court failed to explain at sentencing why it rejected her request for a downward departure or a variance, the panel found no basis to conclude that an obvious and prejudicial error occurred, much less one that seriously affected the fairness, integrity, or public reputation of judicial proceedings. The panel therefore affirmed the custodial portion of her sentence.

Because vacating at least the suspicionless-search condition based on the *Wise* error alters the overall package of conditions that the district court thought were warranted to ensure that the defendant was adequately supervised after her release from incarceration, the panel exercised its discretion to vacate the entirety of the supervised release portion of her sentence and to remand to the district court for the limited purpose of imposing a new supervised release sentence.

Judge Higginson concurred in the judgment, agreeing that the sentence must be vacated because numerous supervised release conditions which appeared in the defendant's written judgment were not pronounced orally at sentencing. He would realign this aspect of sentencing with the court's duty under 18 U.S.C. § 3583—to confirm relatedness to a defendant's circumstance and least restrictiveness—by requiring oral articulation at sentencing of any supervised release condition that is discretionary regardless of whether a Sentencing Commission policy statement classifies the condition as "standard" or "special."

**COUNSEL**

Doug Keller (argued), Law Office of Doug Keller, San Diego, California, for Defendant-Appellant.

David Chu (argued), Assistant United States Attorney; Daniel Earl Zipp, Chief, Appellate Section, Criminal Division; Robert S. Brewer, Jr., United States Attorney; United States Attorney's Office, San Diego, California, for Plaintiff-Appellee.

**OPINION**

COLLINS, Circuit Judge:

Olivia Reyes appeals the sentence imposed by the district court after she pleaded guilty to unlawful importation of methamphetamine and heroin. Her principal contention is that the district court erred by failing to give her advance notice before imposing a special condition of supervised release that requires her to submit to suspicionless searches by any law enforcement officer. Reyes asserts that this contravened our decision in *United States v. Wise*, 391 F.3d 1027 (9th Cir. 2004), which held that, "[w]here a condition of supervised release is not on the list of mandatory or discretionary conditions in the sentencing guidelines, notice is required before it is imposed." *Id.* at 1033. The Government contends that *Wise* was effectively overruled by the Supreme Court in *Irizarry v. United States*, 553 U.S. 708 (2008), which held that, before imposing a custodial sentence, a district court is not required to give advance notice that it is considering varying upwards from the applicable sentencing range under the Sentencing Guidelines. We conclude that *Wise* remains good law after

*Irizarry*, and we therefore vacate the sentence in part, affirm it in part, and remand.

## I

Pursuant to a written plea agreement, Reyes pleaded guilty to a two-count information charging her with (1) importation of 50.4 kilograms of a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 952(a), 960(b)(1)(H); and (2) importation of 640 grams of a mixture or substance containing a detectable amount of heroin, in violation of 21 U.S.C. §§ 952(a), 960(b)(2)(A).  According to the factual basis set forth in the plea agreement, Reyes drove a vehicle containing those drugs from Mexico into the United States through the Otay Mesa Port of Entry on May 22, 2019, and she "knew there was a high probability that the vehicle contained methamphetamine and heroin, or some other federally controlled substance, and [she] deliberately avoided learning the truth."

At Reyes's sentencing hearing, the district court calculated a Sentencing Guidelines range of 151–188 months, which it considered "too high for this offense" after considering the various sentencing factors set forth in 18 U.S.C. § 3553(a).  The court also concluded that, in light of amendments made by the First Step Act, Reyes was eligible under the so-called "safety valve" provision, *see id*. § 3553(f), for a sentence below the otherwise applicable mandatory minimum 10-year sentence for count one specified in 21 U.S.C. § 960(b)(1)(H).  Although Reyes requested a 42-month sentence, the court ultimately agreed with the Government's recommendation to impose a 78-month sentence.  The court also imposed a five-year term of supervised release.  *See* 18 U.S.C. §§ 3553(f); 21 U.S.C. § 960(b)(1), (2).

In pronouncing the sentence, the district court orally recited several case-specific conditions of supervised release. In doing so, the court generally followed some of the special conditions that had been recommended by the Probation Office in its presentence report ("PSR"). As to one of those conditions, however, the district court's oral sentence made a significant change, without prior warning to the parties, from what the PSR had suggested. Specifically, in lieu of the PSR's proposed condition that Reyes submit to searches of her "person, property, house, residence, vehicle, papers, computers," other electronic devices, or "office" by a "United States probation officer" upon reasonable suspicion of a violation of her supervised release conditions, the court instead required Reyes to submit "to a search of her person, her property, her residence, and her vehicle by the probation officer or by any peace officer, state, federal, or local." The court explained that "[t]he stealthy conduct involved here justifies an expansion of the search conditions to include police, not just the probation officer." After Reyes's counsel objected to that condition in the already-pronounced sentence, the court cut him off and explained why the court had imposed it. The court reiterated that Reyes's offense behavior had involved "stealthy, sneaky conduct," and the court added that, in light of the PSR's recounting of Reyes's drug-related text messages, her drug trafficking here "was not a one-off situation." The court further noted that Reyes had a prior state court conviction for child endangerment arising from allowing her child to be in a house from which another person sold drugs. Those reasons, the court concluded, "call for greater restrictions on [Reyes's] Fourth Amendment rights while she's on supervised release."

The district court's subsequent written judgment included a somewhat different list of supervised release

conditions from those stated orally at the sentencing. The judgment included the mandatory and standard conditions set forth in 18 U.S.C. § 3583(d) and U.S.S.G. § 5D1.3(a), (c), even though those had not been expressly mentioned at the sentencing hearing. *Cf. United States v. Napier*, 463 F.3d 1040, 1043 (9th Cir. 2006). More importantly, several of the special conditions were worded either differently, or in more detail, than in the oral sentence. As to the search condition, the written sentence provided as follows:

> Submit to a search of person, property, house, residence, office, vehicle, papers, cellular phone, computer or other electronic communication or data storage devices or media effects, conducted by a United States Probation Officer or any federal, state, or local law enforcement officer, at any time with or without a warrant, and with or without reasonable suspicion. Failure to submit to such a search may be grounds for revocation; you shall warn any other residents that the premises may be subject to searches pursuant to this condition.

There were also differences in wording in the supervised released conditions involving Reyes's ability to travel to Mexico, her participation in a mental health treatment program, and her maintaining full-time employment or education.

Reyes timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## II

In *United States v. Wise*, 391 F.3d 1027 (9th Cir. 2004), we held that when a particular "condition of supervised release is not on the list of mandatory or discretionary conditions in the sentencing guidelines, notice is required before it is imposed, so that counsel and the defendant will have the opportunity to address personally its appropriateness." *Id*. at 1033. Here, the district court's search condition was not on the list of mandatory or standard conditions in U.S.S.G. § 5D1.3(a), (c). *See also* 18 U.S.C. § 3583(d) (setting forth certain mandatory conditions, which are incorporated into § 5D1.3(a)). Although a search condition was recommended in the PSR that was provided to Reyes in advance of the sentencing hearing, Reyes had no objection to *that* condition, which was much narrower than the one that the district court ultimately imposed.

Moreover, at no time prior to the imposition of sentence did the district court provide any notice to the parties that it was considering a substantial modification and expansion of the search condition that the PSR had proposed. That point is significant, because we further specifically held in *Wise* that *some* notice *prior* to imposing sentence is required:

> It may be enough in many cases for the judge to mention orally at the sentencing hearing that he is contemplating a condition, in case either party wishes to comment or request a continuance. It is not enough notice, however, first to impose the sentence, and then to invite counsel to comment, at least where counsel objects as occurred here. That is no notice at all. Talking a judge out of a decision he has already made is a different and harder task than persuading him not to

> make it. Also, such an approach prevents negotiation of a condition more precisely tailored to the legitimate interests of both sides.

391 F.3d at 1033. *Wise* would seemingly require us to find that the district court's lack of advance notice was erroneous and to "vacate" at least this condition and to "remand on account of th[at] lack of notice." *Id*.

The Government implicitly concedes that *Wise*, if directly applicable, would require that result, but it asserts two reasons why we should nonetheless affirm the district's court's search condition. For the reasons set forth below, we reject both contentions.

## A

First, the Government argues that Reyes did not adequately preserve below her objection to the lack of advance notice and that she cannot satisfy the more demanding showing required by the plain-error doctrine. *See* FED. R. CRIM. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention."); *United States v. Olano*, 507 U.S. 725, 732–37 (1993) (explaining that, to obtain reversal based on plain error, the defendant must show that there was an "error"; that it was "clear" or "obvious"; that it "affect[s] substantial rights"; and that it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings") (simplified). We disagree.

The Government relies on *United States v. Watson*, 582 F.3d 974 (9th Cir. 2009), in which the defendant similarly challenged on appeal a special condition of supervised release that was never mentioned until it was

actually imposed. *Id*. at 981. In determining what standard of review to apply, we stated that, "[w]hile Watson protested the actual condition at sentencing, *he did not object on the grounds of insufficient notice*, so we review that claim for plain error." *Id*. (emphasis added). But in *Watson*, immediately after imposing the condition, the district court engaged in an extended colloquy with defense counsel during which that counsel had a full and fair opportunity to raise any grounds of objection. *Id*. at 979–80 (reproducing that colloquy). By contrast, no such opportunity was afforded to Reyes's counsel. The district court instead cut off counsel in mid-sentence, explained its reasoning, and then concluded with the remark that "Your objection is noted."[1]

---

[1] The full exchange, which occurred at the very end of the hearing transcript, is as follows:

> [DEFENSE COUNSEL]: And just for the record, I do want to object to the full Fourth Amendment waiver. I think it's—it would be a lot more in line with this case that she submit to a search by a probation officer at a reasonable time—
>
> THE COURT: I disagree with that for two reasons. One, even acknowledging that she wasn't the one dealing drugs out of the house, she shouldn't have been there with a two-year-old. She should have sized up what was going on and left, number one.
>
> Number two, the record here that I've accepted, unobjected to, was that—as I found, that the defendant—this was not a one-off situation. She was involved in—in drug trafficking, and making arrangements with others. And the texts reveal that. And that was over a period of time. Those circumstances involve stealthy, sneaky conduct, trying

In view of the district court's interruption of defense counsel's objection, the court's ensuing considered explanation, and its concluding definitive comment that counsel's "objection is noted," we do not think that counsel was afforded "any real opportunity to object" further. *See United States v. Blueford*, 312 F.3d 962, 974 (9th Cir. 2002). We therefore reject the Government's suggestion that we should review the lack-of-notice issue only for plain error, and we instead consider that issue de novo. *See United States v. Hahn*, 557 F.3d 1099, 1101 (9th Cir. 2009); *see also* FED. R. CRIM. P. 51(b) ("If a party does not have an opportunity to object to a ruling or order, the absence of an objection does not later prejudice that party.").

**B**

The Government alternatively contends that our decision in *Wise* was effectively overruled by the Supreme Court's subsequent decision in *Irizarry v. United States*, 553 U.S. 708 (2008), and that *Wise* is therefore no longer binding. In assessing this contention, we begin by reviewing the relevant caselaw leading up to our decision in *Wise*, as well as the later decision in *Irizarry*. That review demonstrates that *Wise* is easily reconciled with *Irizarry*, and that *Wise* remains binding. *See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc) (holding that a three-judge panel can

---

to keep things away from cops and police, so they don't know, including expressly, you know, changing language, and changing the reasons why we're coming in, discussing stealthy measures.

All of those things, I think, call for greater restrictions on her Fourth Amendment rights while she's on supervised release. That's my response. Your objection is noted.

disregard otherwise binding Ninth Circuit precedent only if an intervening Supreme Court or en banc decision "undercut[s] the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable").

## 1

In *Burns v. United States*, 501 U.S. 129 (1991), the Supreme Court addressed "whether a district court may depart upward from the sentencing range established by the Sentencing Guidelines without first notifying the parties that it intends to depart." *Id*. at 131.  The Court noted that "[i]n the ordinary case, the presentence report or the Government's own recommendation will notify the defendant that an upward departure will be at issue and of the facts that allegedly support such a departure." *Id*. at 135. *Burns*, by contrast, was "the extraordinary case in which the district court, on its own initiative and contrary to the expectations of both the defendant and the Government, decide[d] that the factual and legal predicates" for an upward departure were satisfied.  *Id*.  Noting that the then-existing version of Federal Rule of Criminal Procedure 32(a)(1)— which had been directly enacted by Congress rather than adopted through the ordinary rules process—"mandates that the parties be given 'an opportunity to comment upon the probation officer's determination and on other matters relating to the appropriate sentence,'" the Court held that "it makes no sense to impute to Congress an intent that a defendant have the right *to comment* on the appropriateness of a *sua sponte* departure but not the right *to be notified* that the court is contemplating such a ruling."  *Id*. at 135–36 (quoting FED. R. CRIM. P. 32(a)(1) (1990 ed.)); *see also* PUB. L. NO. 98-473, Title II, § 215, 98 Stat. 1837, 2014 (1984)

(rewriting Rule 32(a)(1) as part of the Sentencing Reform Act).[2]

The *Burns* Court emphasized that, given the critical role that departures played under the then-mandatory Sentencing Guidelines, a lack of notice of an upward departure would "render[ ] meaningless the parties' express right 'to comment upon . . . matters relating to the appropriate sentence.'"   501 U.S. at 136 (quoting FED. R. CRIM. P. 32(a)(1) (1990 ed.)).   As the Court explained, in the absence of such a departure, the district court was *required* to impose a sentence within the Guidelines range. *Id.* at 133. And because neither the PSR nor the Government had suggested that Burns's case presented any grounds for upward departure, there was simply no basis to expect, going into the sentencing hearing in that case, that an upward departure was a possibility that defense counsel had to be prepared to address. *Id.* at 131, 135. Moreover, given the limitless "number of potential factors that [might] warrant a departure," the parties were not "in a position to guess when or on what grounds a district court might depart, much less to 'comment' on such a possibility in a coherent way." *Id.* at 136–37.   Finally, the Court concluded that a narrower reading of Rule 32(a)(1) would raise serious due process concerns and should therefore be avoided if possible. *Id.* at 138 (citing *Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988)).   The Court therefore held that "before a district court can depart upward on a ground not identified as a

---

[2] The relevant language in Rule 32 is now contained, in substantially similar form, in Rule 32(i)(1)(C).  *See* FED. R. CRIM. P. 32(i)(1)(C) ("At sentencing, the court[] . . . must allow the parties' attorneys to comment on the probation officer's determinations and other matters relating to an appropriate sentence.").

ground for upward departure either in the presentence report or in a prehearing submission by the Government, Rule 32 requires that the district court give the parties reasonable notice that it is contemplating such a ruling." *Id*.

We distinguished *Burns* in *United States v. Lopez*, 258 F.3d 1053 (9th Cir. 2001), which involved a district court's *sua sponte* decision to require, as a condition of supervised release, that the defendant participate in a mental health treatment program. *Id*. at 1055–56. We observed that, although technically a "special" condition of supervised release, this particular condition was expressly "*contemplated by* the guidelines." *Id*. at 1055. That is, § 5D1.3(d)(5) "specifically recommends that a special condition of mental health program participation be imposed[] '[i]f the court has reason to believe that the defendant is in need of psychological or psychiatric treatment.'" *Id*. (quoting U.S.S.G. § 5D1.3(d)(5)). Because this special condition was included among the relatively modest number of "special" conditions expressly suggested by the Guidelines, a defendant whose history presented actual or potential mental health issues was on notice that such a condition was a possibility. As we explained, such a condition "is not outside the guidelines range—or the range of expectations—in the same way that a departure is." *Id*. at 1056.

We then, in turn, distinguished *Lopez* in our decision in *Wise*. In the latter case, the district court had *sua sponte* imposed, without advance notice, a condition of supervised release restricting the defendant's contact with children, including a specific restriction on her "custody and contact" with her five-year-old son. *Wise*, 391 F.3d at 1030–31. We concluded that, because this condition was not one of the special conditions suggested in the Guidelines, the notice

issue presented in *Wise* fell "on the *Burns* rather than the *Lopez* side of the line." 391 F.3d at 1032. Because neither the PSR nor the Government had suggested such a special condition and it was "not on the list of mandatory or discretionary conditions in the sentencing guidelines," we held that "notice is required before it is imposed, so that counsel and the defendant will have the opportunity to address personally its appropriateness." *Id*. at 1033.

Thereafter, in *Irizarry*, the Supreme Court addressed the distinct question whether a district court at sentencing is required to give notice that it is contemplating a "variance" from the Sentencing Guidelines. *See* 553 U.S. at 709–10. After the "mandatory features of the Guidelines" were "invalidated" in *United States v. Booker*, 543 U.S. 220 (2005), the Guidelines became "advisory" in nature and were simply one of the sentencing factors to be considered under 18 U.S.C. § 3553(a). *Irizarry*, 553 U.S. at 713–14. In all cases, therefore, a court "has the legal authority to impose a sentence outside the [Guidelines] range *either* because he or she 'departs' from the range (as is permitted by certain Guidelines rules) *or* because he or she chooses to 'vary' from the Guidelines by not applying them at all." *Chavez-Meza v. United States*, 138 S. Ct. 1959, 1963 (2018) (emphasis added). At the time that *Irizarry* was decided, *Burns*'s holding that notice was required for departures had been codified into its own separate provision of Rule 32, *see* FED. R. CRIM. P. 32(h),[3] and the Court concluded that this special

---

[3] That rule provides as follows:

> Before the court may depart from the applicable sentencing range on a ground not identified for departure either in the presentence report or in a party's prehearing submission, the court must give the

rule for "departure[s]" does "not apply to 18 U.S.C. § 3553 variances by its terms," *Irizarry*, 553 U.S. at 714. The question, then, was whether the general provisions of Rule 32 on which *Burns* was based required a similar result in the case of variances. The Court held that the answer to this question is no. *Id*. at 714–16.

Unlike in *Burns*, in which a court-initiated departure undermined the "expectation" that "a criminal defendant would receive a sentence within the presumptively applicable Guidelines range," the post-*Booker* sentencing regime affords judges substantial discretion in applying the § 3553 factors to determine the appropriate term of incarceration. *Id*. at 713–14. Because all parties know that, at sentencing, the district court has discretion to select a custodial sentence based on the enumerated statutory factors, the Court held that "[t]he due process concerns that motivated the Court to require notice in a world of mandatory Guidelines no longer provide a basis for this Court to extend the rule set forth in *Burns* either through an interpretation of Rule 32(h) itself or through Rule 32(i)(1)(C)." *Id*. at 714. Given the now "fluid and dynamic process" involved in selecting the term of incarceration, the possibility of a variance is on the table in every case, and so "announcing that possibility" is unlikely to "change[] the parties' presentations in any material way" in "most cases." *Id*. at 715 (citation and internal quotation marks omitted). Accordingly, the Court concluded that "the justification for our decision in *Burns* no longer exists," and

---

parties reasonable notice that it is contemplating such a departure. The notice must specify any ground on which the court is contemplating a departure.

Fed. R. Crim. P. 32(h).

a district court is therefore not required to provide notice that it is contemplating a variance from the Guidelines range. *Id*. at 716.

**2**

Against this backdrop, we have little difficulty in concluding that *Wise* remains good law after *Irizarry*.

As an initial matter, a key consideration on which *Irizarry* relied—the substantial change wrought by *Booker*'s elimination of the statutory *mandate* in § 3553(b)(1) to impose a sentence *within* the Guidelines range unless there are grounds for a departure—has no analog in the context of special conditions of supervised release. Insofar as the selection of such conditions are concerned, *Booker* made no relevant change to a district court's discretion. Both before *Booker*, and today, the court has the same measure of substantial discretion to select special conditions. Given that, in contrast to the custodial sentencing at issue in *Irizarry*, there is no relevant change in the sentencing system concerning special conditions of supervised release, there is no basis for concluding that the notice concerns that we identified in *Wise* have been in any way diminished.

Moreover, the sort of custodial sentencing issue addressed in *Irizarry* differs in an additional critical respect from the crafting of special supervised release conditions. By its nature, the selection of a fixed term of *incarceration* is largely a unidimensional decision—considering the § 3553(a) factors, the judge must select some determinate *number of months* between zero and the applicable statutory maximum. All parties thus appear at a sentencing prepared to address what that number of months should be and how the various factors should be weighed. *Irizarry*, 553 U.S. at 716 ("'Garden variety considerations of culpability,

criminal history, likelihood of re-offense, seriousness of the crime, nature of the conduct and so forth should not generally come as a surprise to trial lawyers who have prepared for sentencing.'") (citation omitted).   For that reason, as the Court noted, it would be pointless to require a district court to inform the parties in advance that it is contemplating varying from the Guidelines in selecting the *custodial* sentence.  *Id*. at 715.  But as we explained in *Wise*, there is no inherent limitation on the wide variety of special conditions that could be imposed on a term of supervised release, and notice is therefore required if the court is contemplating a condition that is neither being requested by the PSR nor a party nor "on the list of mandatory or discretionary conditions in the sentencing guidelines." 391 F.3d at 1033.  Indeed, a special condition of supervised release does not even "have to be related to the offense of conviction."  *Id*. at 1031.

Accordingly, the entire rationale for *Irizarry*'s conclusion—that, post-*Booker*, all parties know that they need to be prepared at sentencing to advocate for a specific number of months within a highly discretionary unidimensional numerical range—has no application to a situation in which the court is contemplating a special condition that is *not* mentioned in the Guidelines and that no party nor the PSR has proposed.  In the distinct situation of special conditions of supervised release, it remains difficult to see how the parties can be expected to "comment" on this "matter[] relating to an appropriate sentence," *see* FED. R. CRIM. P. 32(i)(1)(C), if they have no idea, from either the Guidelines, the PSR, or the parties' submissions, that a particular condition is a possibility, *see Burns*, 501 U.S. at 135–36; *Wise*, 391 F.3d at 1032–33.

Because *Wise* can be readily reconciled with *Irizarry*, it remains binding.   *See Miller*, 335 F.3d at 899–900. Accordingly, *Wise* controls here.  The district court therefore erred by failing to give notice that it was contemplating imposing its broad search condition prior to imposing that condition in its oral pronouncement of sentence.   We therefore must vacate at least that portion of Reyes's sentence.

## III

Reyes raises only one challenge to the custodial portion of her sentence—she contends that the district court failed to explain at sentencing why it rejected her request for a downward departure under *United States v. Mendoza*, 121 F.3d 510 (9th Cir. 1997), or for a variance on similar grounds.  In *Mendoza*, we held that, when the facts indicate that the defendant "had no control over, or knowledge of, the purity of the [drugs] that he [or she] delivered," a district court has authority to depart downwards on the ground that the drug-quantity-based Guidelines offense level "grossly overstates the culpability of the defendant's conduct."   *Id*. at 513–14.  In her sentencing memorandum, Reyes briefly argued that she should receive a downward departure or variance because she "lacked control and knowledge of the type and quantity of narcotics" she imported.   Reyes's counsel, however, did not specifically mention this ground at sentencing, and the court did not advert to it in its explanation of the sentence.   Because Reyes made no objection and did not specifically ask the court to address the point, she concedes that our standard of review is only for plain error.  We find no plain error.

A "district court need not tick off each of the § 3553(a) factors to show that it has considered them," but "when a party raises a specific, nonfrivolous argument tethered to a

relevant § 3553(a) factor in support of a requested sentence, then the judge should normally explain why he [or she] accepts or rejects the party's position." *United States v. Carty*, 520 F.3d 984, 992–93 (9th Cir. 2008). Reyes's *Mendoza*-based argument was not frivolous, but given that it spanned just five lines in her sentencing memorandum, and her attorney never mentioned it at the hearing, we cannot say that the district judge's failure to specifically mention it was an "obvious" error. *See Olano*, 507 U.S. at 734. Moreover, the district court carefully explained the many considerations that underlay its decision to choose a 78-month sentence, which represented a substantial downward variance from the Guidelines range of 151–188 months. Given that the court's explanation sufficiently "communicate[d] that the parties' arguments have been heard, and that a reasoned decision has been made," *Carty*, 520 F.3d at 992, we find no basis to conclude that an obvious and prejudicial error occurred, much less one that "'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings,'" *Olano*, 507 U.S. at 736 (citation omitted).

## IV

Based on the *Wise* error, we must at least vacate the special condition of supervised release requiring Reyes to submit to suspicionless searches by any law enforcement agency. Because that alters the overall package of conditions that the district court thought were warranted to ensure that Reyes was adequately supervised after her release from incarceration, we exercise our discretion to vacate the entirety of the supervised release portion of her sentence and to remand to the district court for the limited

purpose of imposing a new supervised release sentence.**[4]**
We affirm, however, the district court's imposition of
concurrent sentences of 78 months imprisonment on both
counts. *See United States v. Doe*, 488 F.3d 1154, 1163 (9th
Cir. 2007) (limited remand of only the supervised release
portion of the sentence is an appropriate remedy for *Wise*
error).

**AFFIRMED IN PART, VACATED IN PART, and
REMANDED.**

---

HIGGINSON, Circuit Judge, concurring in the judgment:

I concur in the judgment, agreeing that Reyes' sentence
must be vacated because numerous supervised release
conditions which appeared in her written judgment were not
pronounced orally at sentencing. *United States v. Munoz-
Dela Rosa*, 495 F.2d 253, 256 (9th Cir. 1974) ("The only
sentence that is legally cognizable is the actual oral
pronouncement in the presence of the defendant."); FED. R.
CRIM. P. 35(c) (same); *see also United States v. Blueford*,
312 F.3d 962, 974 (9th Cir. 2002).

Although the most intrusive supervised release condition
that was broadened in the written judgment is a near-
limitless provision requiring Reyes to submit to searches "at

---

**[4]** Our vacatur of the supervised release portion of Reyes's sentence
moots her remaining arguments that there are improper discrepancies
between the oral and written versions of some of the other supervised
release conditions. We therefore do not address the concurrence's
suggestion that this court should "realign" its caselaw concerning
whether oral pronouncement of "standard" supervised release conditions
is required. *See* Concurrence at 24 n.1.

any time . . . and without reasonable suspicion," other restrictions—including work, travel, and mental health treatment requirements—similarly were not pronounced orally yet implicate the range of significant interests that supervised release terms impose as well as protect.

Above all, supervised release facilitates defendants' successful and safe re-entry into society after imprisonment, provide defendants with rehabilitation and treatment opportunities, and enable victim restitution and security. Correspondingly, failure to adhere to a release condition can result in revocation, re-imprisonment, and even re-prosecution. *See* FED. R. CRIM. P. 32.1; 18 U.S.C. § 3583(e). It is in everyone's interest—courts, the government, defendants, society at large, and especially crime victims— that each condition be articulated at sentencing, even through adoption of proposed conditions in a presentence report, unless the condition is one that is required by law. And, not surprisingly, that *is* the law. 18 U.S.C § 3583 lists *required* release conditions which must be imposed, by law, and also gives sentencing courts authority to impose a myriad of other conditions as long as these *discretionary* condition are "reasonably related" to a defendant's circumstance and "involve[] no greater deprivation of liberty than is reasonably necessary . . . ." 18 U.S.C. § 3583(d). Requiring articulation of these discretionary restrictions gives defendants an opportunity to object to them, so that sentencing courts can confirm offense/offender relatedness and narrow tailoring. *Id.* Individualized focus at sentencing, therefore, not only benefits society by preventing uninformed revocations while enhancing rehabilitation, supervision, and societal safety but also is a statutory and criminal rule-based imperative. *See generally* U.S. Sentencing Comm'n, Federal Probation and Supervised Release Violations, at 14 (2020) (over one hundred thousand

federal offenders are on supervised release each year, and approximately 10–15% violate release conditions).

As other courts of appeal perceive, however, the Sentencing Guidelines subdivide further, offering policy statements which recommend specific discretionary conditions as "standard" or "special" or "additional." These sub-designations are distinct from Congress's binary treatment of release conditions as either required or discretionary and courts err when they allow insertion of "special" or "standard" restrictions into written judgments for the first time—hence without oral pronouncement, much less courts' statutory duty to confirm relatedness and least restrictiveness upon objection—on the theory that these conditions are "contemplated," "implied," "suggested," or "recommended" in the Guidelines sufficiently for defendants to be deemed on notice that they might appear later in written judgments.

I am persuaded by the courts that have realigned this crucial aspect of criminal sentencing with the above-mentioned statutory imperative by requiring oral articulation at sentencing of any supervised release condition that is discretionary—i.e. not required by law—regardless of whether a Sentencing Commission policy statement classifies the condition as "standard" or "special." *See, e.g. United States v. Kappes*, 782 F.3d 828, 846 (7th Cir. 2015) ("[A] condition's label in the guidelines is ultimately irrelevant. *All* discretionary conditions, whether standard, special or of the judge's own invention, require findings."); *United States v. Anstice*, 930 F.3d 907 (7th Cir. 2019); *United States v. Diggles*, 957 F.3d 551, 557–559 (5th Cir. 2020) (en banc); *United States v. Rogers*, 961 F.3d 291 (4th Cir. 2020); *United States v. Boyd*, 5 F.4th 550, 559–560 (4th Cir. 2021).

Adopting § 3583's bright-line distinction between required and discretionary release conditions would likely be salutary in terms of appellate remedy as well. Caselaw is uncertain as to when remand for a sentencing do-over may occur at all and whether an entire sentence must be vacated as a package or just the non-articulated supervised release conditions. *See United States v. Napier*, 463 F.3d 1040, 1043–44 (9th Cir. 2006).[1] Further complication arises from Rule 43's presence requirement at sentencing, hence presumably also at resentencing. *See* FED. R. CRIM. P. 43(a)(3).

With these observations, I respectfully concur in the judgment.

---

[1] Interestingly, the *Napier* decision describes appellate authority to remand for resentencing only when an oral sentence has ambiguity. 463 F.3d 1043–44. Because ambiguity existed in *Napier*, "standard" and "nonstandard" conditions alike were vacated and remanded for resentencing. *Id.* at 1044. Accordingly, the court's overbroad assertion that "imposition of . . . mandatory *and standard* conditions is deemed to be implicit in an oral sentence imposing supervised release," *id.* at 1043 (emphasis added), appears to me to be dicta. *See* Pierre N. Leval, *Judging Under the Constitution: Dicta About Dicta*, 81 N.Y.U. L. REV. 1249, 1256 (2006). To my knowledge, this court has never since, in a published opinion, conflated statutorily required conditions with discretionary ones, implying that both are "implicit" in oral pronouncements, even though it has applied *Napier's* overbroad dicta determinatively in dozens of unpublished cases. I mention this not to dissent from the instant remand for partial resentencing that we order here, which has separate, binding precedent as authority, *see United States v. Doe*, 488 F.3d 1154, 1163 (9th Cir. 2007), but instead to suggest gently that this court has been free to realign caselaw with § 3583's distinction between required and discretionary release conditions, as other courts have.