In the

# United States Court of Appeals
## For the Seventh Circuit
_____

No. 22-1349

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CHRISTOPHER TRUETT,

*Defendant-Appellant.*

_____

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:18-cr-00313 — **James P. Hanlon**, *Judge.*

_____

ARGUED OCTOBER 26, 2023 — DECIDED AUGUST 1, 2024

_____

Before FLAUM, BRENNAN, and KIRSCH, *Circuit Judges.*

KIRSCH, *Circuit Judge.* Christopher Truett ran a metham-phetamine distribution operation from jail. For his role in the operation, he pleaded guilty to a drug conspiracy charge. During the change-of-plea hearing, he notified the judge of his mental, cognitive, and memory impairments and, before sentencing, provided additional evidence of those impair-ments and their degree. He now argues that the district court should have sua sponte held a competency hearing because

his impairments and behavior at the change-of-plea hearing
suggested that he might have been incompetent. He also chal-
lenges the court's Sentencing Guidelines calculation, contend-
ing that it was based on a drug quantity that erroneously at-
tributed to him all the methamphetamine obtained by the
conspiracy. Finally, he requests that we vacate a condition of
supervised release that the court included in the written judg-
ment but failed to orally pronounce.

We conclude the district court did not err by failing to hold
a competency hearing, nor by attributing all the methamphet-
amine to Truett. Further, because the condition of supervised
release included only in the written judgment is a mandatory
condition, we decline to vacate that condition and affirm.

I

While incarcerated in the Marion County Jail awaiting
trial on state methamphetamine charges, Christopher Truett
helped organize a methamphetamine distribution operation.
Calling from the jail telephone, he purchased methampheta-
mine from a codefendant and then directed his girlfriend to
pick up the drugs and sell them to others for distribution.
Once the drugs had been sold, Truett directed his girlfriend
to collect the proceeds from the sales.

Truett and his coconspirators were charged with various
drug and firearm offenses. Truett was only named in Count
1, which charged conspiracy to possess with intent to distrib-
ute and to distribute methamphetamine in violation of 21
U.S.C. §§ 841(a)(1), 841(b)(1)(A), & 846.

Truett pleaded guilty to the charge. At the change-of-plea
hearing, Truett told the court that he was not being given his
medication, had been diagnosed with mild cognitive

impairment (MCI) and PTSD, and had "trouble reading a lot." And he remarked that he did not know if his MCI and PTSD affected his ability to understand the proceeding. But after these statements, Truett conferred with his counsel, who stated that he was "confident that [Truett] is competent to go forward today." Counsel noted that, earlier that day, he had engaged Truett in conversation about the details of his case and that, at the hearing, Truett understood who was present in the courtroom and their roles. Truett also affirmed he would like to go forward with the plea but noted that he has "a lot of trouble remembering the past."

During the hearing, Truett made some odd, informal comments but affirmed that he understood the charges and the consequences of pleading guilty. These comments included him telling the court, "I like you" after the court told him it would determine the Guidelines range and saying, "I don't like [guns]" after the court advised him that, by pleading guilty, he would lose his right to possess firearms. Truett also misread the minimum penalty noted in the Presentence Investigation Report (PSR) as the maximum penalty and sought clarification from the court on that issue. And he later interrupted a colloquy between the government and the court regarding forfeiture to state, "None of that forfeiture belongs to me." Similarly, following the government's statement of facts it would be able prove at trial, he stated that he did not know and did not work with a codefendant whom the government described as his coconspirator. And, as the court explained the Sentencing Guidelines and their advisory nature, Truett asked, "What's that mean, revisory?" but, after speaking with his counsel, noted that he understood the term advisory.

At the sentencing hearing, Truett offered additional evidence of the degree of his impairments but did not seek a competency hearing, and the court did not order one sua sponte. Truett provided the results of a neuropsychological evaluation, which included the conclusion that he functions at the level of understanding of a ten-year-old. And his counsel remarked that his memory loss had become more apparent.

During the hearing, the court adopted the findings of fact set forth in the PSR that Truett ran a methamphetamine operation from jail by using the jail phone to direct drug purchases, sales, and the collection of proceeds. The court also adopted the PSR's calculation of the Guidelines range of 210 to 262 months, which was based in part on the finding that the conspiracy had obtained at least three kilograms of methamphetamine. Truett did not object to the PSR's description of his conduct or to the court's calculation of the Guidelines range. But, in response to the government's description of his conduct, he did ask his counsel to briefly clarify how long he knew one of his coconspirators.

The court sentenced Truett to 240 months of imprisonment, five years of supervised release, and a $250 fine. The court also orally pronounced the conditions of supervised release, but the written judgment included an additional condition requiring Truett to pay the fine in accordance with the Schedule of Payments included in the judgment. Truett appealed.

## II

Truett asserts that the district court should have held a competency hearing sua sponte prior to accepting his guilty

plea and before sentencing him. We review the district court's failure to sua sponte hold a competency hearing for abuse of discretion. *United States v. Stoller*, 827 F.3d 591, 596 (7th Cir. 2016); *United States v. Garrett*, 903 F.2d 1105, 1116 (7th Cir. 1990) ("[W]hile our review is comprehensive, the district court retains a good deal of latitude in how it evaluates the need for a formal competency hearing.").

Due process bars courts from both accepting an incompetent person's guilty plea and sentencing him. *Anderson v. United States*, 865 F.3d 914, 919 (7th Cir. 2017). To protect the due process rights of such persons, 18 U.S.C. § 4241(a) requires district courts to order a competency hearing sua sponte "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." Whether reasonable cause exists is a "highly individualized" inquiry and depends on a broad range of evidence bearing on competency, such as the defendant's demeanor in court and medical opinions on his competency. See *Sturgeon v. Chandler*, 552 F.3d 604, 612 (7th Cir. 2009). Truett argues there was reasonable cause at either the change-of-plea or the sentencing for the court to hold a competency hearing.

A

Having taken a comprehensive review of the record, we conclude that the district court did not abuse its discretion in not ordering a competency hearing sua sponte at the change-of-plea hearing. Truett argues that the court should have found reasonable cause based on his: (1) mental, cognitive,

and memory impairments; (2) professed lack of medication; and (3) behavior during the hearing.

Not every mental, cognitive, or memory impairment is sufficient for reasonable cause to believe a defendant is incompetent. *Price v. Thurmer*, 637 F.3d 831, 833–34 (7th Cir. 2011). The court engaged in a thorough plea colloquy under Federal Rule of Criminal Procedure 11, and Truett actively participated, which suggests his impairments did not preclude him from understanding the proceedings or assisting his counsel. See *United States v. Weathington*, 507 F.3d 1068, 1074 (7th Cir. 2007) (finding no error in the failure to order a psychological evaluation for a defendant whose demeanor the court observed at the plea colloquy and who "provided cogent answers to the court's questions" and fully engaged in the hearing). Truett's counsel told the court that, despite his impairments (MCI, PTSD, and memory loss), Truett "was able to intelligently engage [ ] in conversation" about the case and could identify the courtroom personnel and their roles. The court was entitled to rely on counsel's statement that Truett was competent to proceed. *Chichakly v. United States*, 926 F.2d 624, 634 (7th Cir. 1991). Truett's objection to specific aspects of the government's statement of the facts it would prove at trial also suggested that he at least had sufficient memory to assist counsel and understand the proceedings because he remembered the circumstances of the offense.

Because Truett's unmedicated condition did not support reasonable cause, the district court was right to not identify reasonable cause due to his lack of medication. We have remarked that there are competency concerns when people with severe mental conditions are not taking medication. See *Brown v. Sternes*, 304 F.3d 677, 698 (7th Cir. 2002). But once

Truett affirmed that he did not have medication in his system, the issue was only whether his unmedicated state gave reasonable cause to doubt his competency. It did not.

Truett also points to his conduct during the hearing. Truett's statements of "I like you" and "I don't like [guns]," when taken out of context, might indicate confusion. But his remarks, while perhaps incongruous with the formality of the courtroom setting, were not irrational and did not "indicate[] a failure of memory or understanding" that would give rise to reasonable cause. *United States v. Graves*, 98 F.3d 258, 261 (7th Cir. 1996). His comments, rather than suggest incompetence, demonstrate that Truett was engaged in the hearing and that he understood the judge's role and the consequences of his plea. Truett also asked specific questions to clarify his understanding of the Guidelines and expressed disagreement with both the government's description of the facts it would prove at trial and its identification of what property was subject to forfeiture. And though he misread the minimum penalty as the maximum penalty, he did so because he read the PSR and had a question for the court regarding it. Given his engagement in the proceedings, the court, which had the opportunity to observe Truett's demeanor, did not abuse its discretion in not finding reasonable cause based on his behavior, even when considered alongside his various impairments.

B

At the sentencing hearing, the district court had additional evidence (a neuropsychological evaluation) of the degree of Truett's impairments, but it was not an abuse of discretion for the court not to order a competency hearing. While the evaluation and his counsel's comments about his memory loss showed that his impairments were not insignificant, such

impairments alone may not give rise to reasonable cause where the defendant is otherwise demonstrating an understanding of the proceedings and an ability to assist counsel. Cf. *Eddmonds v. Peters*, 93 F.3d 1307, 1314 (7th Cir. 1996); *id.* at 1319 (finding a defendant competent notwithstanding his schizophrenia in part because the defendant "participate[d] actively and meaningfully in the adversarial process"). And at the sentencing hearing, Truett was still engaged and responsive. He affirmed he had read and discussed the PSR with counsel and later asked the court to read the proposed conditions of supervision to ensure he could ask any questions he might have. He also, through counsel, challenged the government's description of his relationship with his coconspirators. Truett was "oriented to and participating appropriately in the proceedings." *United States v. Ewing*, 494 F.3d 607, 623 (7th Cir. 2007). The district court did not err by failing to hold a competency hearing.

## III

Truett next argues that the district court erred in attributing the entire drug weight of the conspiracy to him as relevant conduct without making the special findings required by U.S.S.G. § 1B1.3(a)(1)(B). We review the district court's Guideline calculation for plain error because Truett did not raise this objection to the district court, and the failure to object appears inadvertent, as there were no sound strategic reasons to forgo the objection. *United States v. Dridi*, 952 F.3d 893, 898–99 (7th Cir. 2020) (Waiver, "the intentional relinquishment of a known right," precludes appellate review, but forfeiture, "the accidental or neglectful failure to timely assert a right," allows for plain error review.).

Truett's argument is premised on the court's supposed at-
tribution of the drugs to him based on the relevant conduct
Guideline provision for "jointly undertaken criminal activ-
ity." U.S.S.G. § 1B1.3(a)(1)(B). But that is not what the court
did. Instead, the court found that Truett was personally in-
volved in every purchase of methamphetamine, directing not
only the purchase and distribution of drugs but also the col-
lection of the proceeds from the sales. It attributed the entire
drug quantity obtained by the conspiracy to Truett as "acts …
counseled, commanded, induced, procured, or willfully
caused by the defendant" under § 1B1.3(a)(1)(A). Thus, the
special findings required by § 1B1.3(a)(1)(B) were irrelevant
because no one else's conduct was attributed to Truett.

IV

Finally, Truett asks us to vacate a condition of supervised
release imposed only in the written judgment but not orally
pronounced at sentencing. We review a claim of inconsistency
between the oral sentence and written judgment de novo.
*United States v. Strobel*, 987 F.3d 743, 747 (7th Cir. 2021). If there
is a conflict between the oral sentence and written judgment,
the oral sentence controls, and we must vacate conditions
only imposed in the written judgment unless the conditions
are mandatory—in other words, required by statute. *Id.* at
747, 749–50. In that case, we need not vacate them. *Id.* at 749–
50.

Here, the court made payment of the fine according to the
Schedule of Payments a condition of Truett's supervised re-
lease in the written judgment. At sentencing, the court did not
orally state this fine payment schedule condition, though it
orally announced the fine. And, because the court levied a
fine, the condition is not a "nullity"—it imposes an obligation

on Truett—and thus renders the written judgment inconsistent with the oral sentence. *Id.* at 750–51. Truett contends that, because the district court failed to orally pronounce the fine payment schedule condition, we must vacate it because it is not mandatory.

The Sentencing Commission considers payment of a fine according to a schedule to be a mandatory condition of supervised release. *Id.* at 750 & n.17 (citing U.S.S.G. § 5D1.3(a)(5) and 18 U.S.C. § 3624(e)). Truett argues that, in light of *United States v. Booker*, 543 U.S. 220, 245–46 (2005), the Sentencing Guidelines cannot make a condition of supervised release mandatory because the Guidelines are advisory, not binding. But Truett reads *Booker* at too high a level of generality. *Booker* held that 18 U.S.C. § 3553(b)(1), which required courts to impose a sentence within the Guidelines, violated the Sixth Amendment and thereby severed that provision from the Sentencing Reform Act of 1984. 543 U.S. at 245. *Booker* did not reject other statutory bases for the mandatory provisions of the Guidelines. *Id.* at 258–59. And it does not "suggest[] that the [Guidelines'] conditions of supervised release … are problematic." *United States v. Ford*, 106 F.4th 607, 608 (7th Cir. 2024); see also *United States v. Reyes*, 18 F.4th 1130, 1137 (9th Cir. 2021) ("[T]he substantial change wrought by *Booker*'s elimination of the statutory mandate in § 3553(b)(1) to impose a sentence within the Guidelines range … has no analog in the context of special conditions of supervised release."). Accordingly, nothing in *Booker* prevents us from concluding that a mandatory condition of supervised release under the Guidelines is a mandatory condition where there is statutory authorization. *United States v. Anstice*, 930 F.3d 907, 909–10 (7th Cir. 2019) (identifying that a condition can be mandatory if it appears in § 3583(d) or is otherwise "made mandatory by

statute," which can be indicated by its description as mandatory in the Guidelines). But see *United States v. Rodriguez*, 75 F.4th 1231, 1246 (11th Cir. 2023) (A discretionary condition is "any condition of supervised release other than those mandatory conditions set forth in 18 U.S.C. § 3583(d).").

Here, the statutory authority—18 U.S.C. § 3624(e)—relied on in Guidelines § 5D1.3(a)(5) reflects a congressional choice to make payment of a fine according to a schedule a mandatory condition of supervised release. It provides, in relevant part

> Upon the release of a prisoner by the Bureau of Prisons to supervised release, the Bureau of Prisons shall notify such prisoner, verbally and in writing, of the *requirement* that the prisoner adhere to an installment schedule, not to exceed 2 years except in special circumstances, to pay for any fine imposed …, and of the consequences of failure to pay such fines under sections 3611 through 3614 of this title.

18 U.S.C. § 3624(e) (emphasis added). This provision, while primarily mandating notification, sets out that adherence to the payment schedule during supervised release is required in every case, or in other words, mandatory. Moreover, if the prisoner then defaults on the payment of a fine, the court may revoke his supervised released (among other possible consequences). 18 U.S.C. § 3613A(a)(1). And default is defined as when "a payment is delinquent for more than 90 days," 18 U.S.C. § 3572(i), and a payment is delinquent if it is "more than 30 days late," *id.* § 3572(h). The premise of these provisions is that fines must be paid in accordance with a schedule: if there were no such requirement, a court could neither find

a payment to be delinquent nor find the payment to be in default. In other words, if a prisoner has not paid a court ordered fine by the time he is released from prison to supervised release, he must pay the fine as the schedule requires or his supervised release may be revoked. Under this statutory framework, the court had no discretion regarding whether to make payment of the fine according to an installment schedule a condition of Truett's supervised release, so the Guidelines correctly describe it as mandatory.

AFFIRMED